[S. F. No. 16146.   In Bank.—October 14, 1940.]

R. C. LUND, Respondent, v. AUTO MECHANICS' UNION No. 1414 et al., Appellants.

Samuel W. Gardiner, Martinelli & Gardiner and Walter E. Rankin for Appellants.

Crist, Biene & Burger for Respondent.

EDMONDS, J.—Acts of union labor occasioned this suit for an injunction, and the appeal is from a decree enjoining the

Auto Mechanics' Union and its business agent from maintaining pickets at the respondent's place of business.

At the time the controversy arose, the respondent owned and operated the "Campus Garage" at Palo Alto. By a verified complaint he alleged that he had only six employees, "none of whom are members of any union and none desire to join a union; that there is no dispute between him and these employees regarding wages, hours, working conditions or otherwise", and they are not on strike. However, the allegations continued, the appellants caused pickets to be placed and maintained in the front and rear of his establishment, carrying signs with the inscription "Unfair to Organized Labor, Auto Mechanics' Union No. 1414", to his damage in the sum of $10,000.

Upon the filing of this complaint, the superior court issued a temporary restraining order. Later the appellants answered the complaint and the issues thus joined came on for trial. Upon findings of fact that the acts charged in the complaint had been committed by the appellants, the court rendered judgment enjoining them from "intimidating, threatening, molesting or coercing" the respondent or any of his employees or customers and also from stationing any pickets for that purpose. Damages in the amount of $1 were awarded.

The following facts appear from the evidence introduced at the trial:

Until a short time before this suit was commenced the respondent carried on a general garage business, furnishing to the public automobile sales, repair, lubrication and storage services. Two buildings were used for this purpose, a small one with an entrance on Alma Street and a larger one adjoining it and running through the entire block with entrances on both Alma and High Streets. As a member of the Motor Car Dealers' Association of Palo Alto, respondent in 1937 entered into a closed shop agreement with the Auto Mechanics' Union. By the terms of this agreement the members of the association had the right to cancel it if within 90 days from its effective date (May 1, 1937) the union had not succeeded in procuring compliance by the independent automobile dealers in that territory with the union standards of employment. A controversy subsequently arose between

the association and the union as to whether this obligation had been performed, and on October 30th the association served upon the union a notice of cancellation to take effect December 1, 1937.

Early in November plaintiff told his mechanics that he could not operate his business on the union scale, and they "agreed to work on a sixty-forty basis". They worked for a week on those terms and then went on strike and commenced picketing the garage. Respondent shut down the garage for several days, and the pickets were withdrawn. He then leased a portion of his building, and later a larger part, to Roy E. Strobel. About the middle of November the garage was reopened as several separate business units, the respondent operating the sales, lubrication and storage departments of the business independent of the repair and paint shops which were conducted by the lessee.

The portion of the premises rented to Strobel was located in the middle of the large building and apparently was not closed off from the rest of the business in any way. The only access to it was by entering and crossing portions of the premises retained by the respondent. Strobel used "Campus Garage" billheads, work sheets and other stationery, which were furnished by the respondent, and there were no signs indicating that the repair shop was operated as an independent unit. However, Strobel informed customers that he was operating an independent business. All collections were handled by the plaintiff and any credit extended by the repair shop was deemed assigned to him, and Strobel's account with the respondent credited *pro tanto*.

According to the terms of the lease Strobel was required to pay 50 per cent of his gross profits as rent. The respondent paid the same rate charged "outsiders" for any repair work done; he had no control over the employment of mechanics, and their wages were paid solely by Strobel. Some of the automobile parts used in the repair work were bought by Strobel, and others were furnished by the respondent.

When the garage was reopened under this arrangement no union men were employed in the repair shop, and the Auto Mechanics' Union again placed a picket line at the garage. One and two men were maintained at both the Alma Street and High Street entrances carrying signs reading, "Unfair to

Organized Labor, Auto Mechanics' Union No. 1414''. As a result, students would stop their cars in the street and honk their horns and jeer at the pickets, and transportation companies and merchants refused to make deliveries through the picket line.

The trial court's findings recite that on November 12, 1937, respondent sold his automobile repair business to Roy Strobel, who leased a portion of the building therefor, and since that date the respondent has not been engaged in the automobile repair business and has employed no members of any union. The court also found that shortly before the commencement of the action the appellants caused from two to four pickets to walk back and forth on the sidewalk in front of the two entrances to the respondent's place of business carrying signs described in the testimony; that the picket line caused people to congregate there and ''to jeer and honk their horns at the pickets'' and to impede ''the ordinary ingress and egress to plaintiff's place of business'' as a result of which transportation companies would not deliver merchandise to respondent's place of business.

The findings also state that at no time during the picketing has there been any contract in force between the respondent and the Auto Mechanics' Union and that there has been no strike and no labor dispute between the respondent and his employees or between the lessee and his employees, and that the picket line is maintained ''for the sole purpose of compelling the hiring of only union auto mechanics by respondent's lessee''. From these findings and one that it is impossible to estimate the damage caused by the appellants' acts, which if continued will cause great and irreparable injury to respondent for which no adequate remedy at law exists, the court concluded that respondent was entitled to injunctive relief.

At the beginning of the trial the appellants offered to stipulate to the entry of a decree restraining them from picketing the respondent's place of business unless their placards showed that the picketing was directed solely at the repair and service department and not at the sales department. This stipulation was not accepted by the respondent, because, it was said, counsel for the appellants had no power to stipulate that other union men would pass through the picket lines to deliver goods to him. However, appellant Anderson later

testified that he knew of no rule which would prevent union men from passing through a picket line under such circumstances.

There are no findings upon this point, and if it be true, as the witness stated, without contradiction, that union teamsters and delivery men would pass through a picket directed at the lessee's business to make deliveries to the respondent, the injunction issued by the trial court is entirely too broad in its scope. Under the principles set forth in *McKay* v. *Retail Automobile Salesmen's Union (ante,* p. 311 [106 Pac. (2d) 373]), and *C. S. Smith Metropolitan Market, Inc.,* v. *Lyons (post,* p. 389 [106 Pac. (2d) 414]), the appellants clearly have a substantial interest in the employment relations of the lessee, Strobel, and under such circumstances they are privileged to peacefully picket his place of business.

But there are more fundamental reasons why the present judgment must be reversed. If the public was led to believe that the picketing was directed at the respondent's business rather than at the repair shop alone, he was as much responsible for the creation of that impression as were the appellants. Both businesses were carried on under the same roof and under the single name of "Campus Garage" and, as the record shows, were operated without even a partition to separate them. All credit accounts for both businesses were handled by the respondent under the name of "Campus Garage", and he retained complete control of what credit should be extended. In addition he supplied the repair shop with some of its automobile parts and received 50 per cent of its gross profits under the lease agreement, which was terminable at the will of either party upon 30 days' notice.

Considering all these circumstances the respondent has no just cause to complain that the picketing affected the business of the entire garage. Largely in substance as well as in form there was but one business unit in operation at that location. Also, the banners carried by the pickets showed that they represented an "Auto Mechanics' Union", which was some indication that their activities were directed solely at the repair department of the garage, and under all of the circumstances shown the respondent was not entitled to injunctive relief.

The judgment is reversed.

Gibson, C. J., Carter, J., and Moore, J., *pro tem.,* concurred.

CURTIS, J., SHENK, J., and MARKS, J., *pro tem.*, dissenting.—We dissent for the reasons stated in the dissenting opinions in the case of *McKay* v. *Retail Automobile Salesmen's Local Union, No. 1067,* S. F. No. 16016 (*ante,* pp. 335, 336 [106 Pac. (2d) 373]).