[Civ. No. 17751.   Second Dist., Div. Two.   July 24, 1950.]

RALPHS GROCERY COMPANY (a Corporation), Appellant, v. AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, LOCAL NO. 439 (an Unincorporated Voluntary Association) et al., Respondents.

McLaughlin & Hutchinson and James A. McLaughlin for Appellant.

Charles P. Scully for Respondents.

MOORE, P. J.—Appeal from a judgment of dismissal made pursuant to an order sustaining a demurrer without leave to amend.

The complaint alleges substantially as follows: Appellant operates a chain of retail grocery markets in Los Angeles County. Those located in Pasadena and Alhambra are within the area of bargaining activity of respondent union. Appellant contracted with respondent to fix the wages, hours, and other terms of its meat market employees. Fourteen types of employees are listed ranging from a market operator or head meat cutter at $95 a week and back-room man at $85 per week down to wrappers at $60 a week. A controversy arose over what employees fall within the category of back-room man. The contract defines the back-room man as one who puts in 20 hours or more of his work week in the back room. The work is not to be divided between two or more men in any one market to defeat the purpose of this clause. The same definition appears in each of the annual collective bargaining agreements since 1943. The description of a back-room man in the contract at first impression was explicit but upon reflection it merely defines him as to the place where he works. When the definition of a back-room man was first incorporated in the contracts the work he performed was well known in the trade, to wit, breaking down the large sides of animals into smaller cuts for display in the meat counters, grinding meats and maintaining the storage cooler in a clean and orderly condition.

In September, 1947, at the Pasadena market and in July, 1949, in the Alhambra market, appellant installed a new method of marketing meats by cutting them into a size suitable for domestic use, wrapping such cuts and displaying them

in self-service refrigerated counters where the customers make their selections. The meats so chosen are taken to a cashier who collects the price marked on each. The over-all effect of the new method substitutes the frozen food display refrigerator for the meat counter behind which the journeyman formerly cut meat in accordance with a customer's directions. With the frozen food display the journeyman is no longer used behind the meat counter but works in the back room. Although the journeymen and the back-room men now work in the back room the distinction between the character of work done by each is maintained; back-room men do the heavy work of breaking down the large carcasses and of grinding meat while the journeymen cut and prepare the pieces in sizes suitable for cooking.

The controversy has arisen because respondents contend that the place where the work is done, as distinguished from the character of the work done in such place, determines the wage category into which the employees fall. The contract fixed the journeyman's pay at $80 per week.

It is alleged that there is an ambiguity in the definition of the back-room man arising from the fact that such definition was adopted prior to the commencement of the precutting and self-service for selling meats, and when the function and duties of a back-room man were clearly established and were understood between appellant and respondents and among all employers and employees engaged in retailing fresh meat products.

It was not the intention of the contract to define a backroom man by the character of the work done by him in that his functions were well understood in the trade, but the provision in the contract was for the sole purpose of specifying the number of hours that any person should work in a back room in order to qualify him for the back-room man's wage and to prevent appellant from dividing the functions of a back-room man among several employees in order to obviate a higher wage scale. The contract provided that a man who was actually employed 20 hours or more per week in the back room was a back-room man. The purpose of this language is indicated by the next sentence that specifies that "the work is not to be divided between two or more men in any one market to defeat the purpose of this clause."

A number of questions were argued in support of the complaint and of the demurrer. On this appeal appellant con-

tends that the complaint states a cause of action despite the fact that it does not show that more than $2,000 is involved, and also because an actual controversy is shown to exist involving the counterquestion of contract. And finally it says that the essence of the controversy is whether the journeyman meat cutter in the back room of the meat market entitles him to the higher scale of pay which the contract specifies for a back-room man. In response to such declaration of the issues respondents say "The sole issue on appeal is whether appellant has shown affirmatively that the trial court abused its discretion in denying relief pursuant to section 1061 of the Code of Civil Procedure."

Appellant contends that all declaratory relief actions are vested in the superior court regardless of the amount of money involved. From the language of section 1060 of the Code of Civil Procedure appellant is correct and from section 89 of the same code, in prescribing jurisdiction of the municipal courts, declaratory relief is not mentioned. The complaint states a clearly defined controversy. A declaration of appellant's rights under the contract should be made by judicial pronouncement. Section 1060, Code of Civil Procedure, specifically confers upon the superior court all actions for declaratory relief. (*American Telephone & Telegraph Co.* v. *California Bank,* 59 Cal.App.2d 46, 51 [138 P.2d 49].) While a court may decline to take jurisdiction where no basis for relief is shown (*Vincent* v. *Security-First National Bank,* 67 Cal.App.2d 602, 611 [155 P.2d 63]), and where the court's discretion is wisely exercised (*Caldwell* v. *Gem Packing Co.,* 52 Cal.App.2d 80, 84 [125 P.2d 901]), such discretion cannot be abused in denying declaratory relief even where other remedies are available. If an action is legally available and the complaint is sufficient in the facts stated it is the court's bounden duty to hear and determine them and to declare the law as applied to them. (*Phelps* v. *Loop,* 53 Cal. App.2d 541, 544 [128 P.2d 63].) It is sufficient if a plaintiff alleges such facts as disclose (1) the existence of an actual controversy involving the legal rights and duties of the parties under a writing and (2) a request that the rights thereunder be adjudged. (*Pacific States Corp.* v. *Pan-American Bank of California,* 213 Cal. 58, 63 [1 P.2d 4, 981].) The very purpose of an action for declaratory relief is to set at rest the unsettled questions which have arisen in the attempts of the contracting parties to interpret their written agreement. It is not essential to the statement

of a cause of action that the thesis of the petitioner be adopted by the court in order for him to be entitled to a trial and a decree. (*Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753, 760 [161 P.2d 217, 162 A.L.R. 747].) ■ A complaint is sufficient if a decree would serve in a practical way to stabilize a dispute which otherwise may lead to disastrous results or defer the realization of the purposes of the contract. (*See Maguire* v. *Hibernia Savings & Loan Society,* 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].)

■ The complaint at bar fills all the requirements of the statute and of the cited decisions. Respondents contend that the location of the employee in doing his work and not the character of his labors should determine his classification. Appellant insists that the term "back-room man" is a traditional term in that it is a hangover from the era when the only employees in the back room did the work of breaking down carcasses and sides of animals and ground the meat. It contends that because a journeyman meat cutter works in the back room and fabricates the big cuts into smaller sizes for marketing in the self-service refrigerators he is not for that reason automatically entitled to the higher salary classification. Appellant asserts the proposition that under a reasonable construction of the contract the character of work done by an employee determines the schedule of pay he is to receive. Since the complaint alleges that both the employer and the union have always understood the functions of a back-room man and that it was not intended that they should be changed it is necessary that a trial be had and a decree be entered adjudging whether appellant's construction is the true one or whether the contrary interpretation asserted by respondents more nearly conforms with the truth.

A situation similar to that involved in the instant case came before the court for determining what the language of the contract was intended to mean. It was held that a trade usage was admissible to show the meaning of the disputed language. The court said that "while words in a contract are ordinarily to be construed according to their plain, ordinary, popular or legal meaning, as the case may be, yet if in reference to the subject matter of the contract, particular expressions have by trade usage acquired a different meaning, and both parties are engaged in that trade, the parties to the contract are deemed to have used them according to their different and peculiar sense as shown by such trade usage. Parol evidence

is admissible to establish the trade usage, and that is true even though the words are in their ordinary or legal meaning entirely unambiguous, inasmuch as by reason of the usage the words are used by the parties in a different sense." (*Ermolieff* v. *R.K.O. Radio Pictures,* 19 Cal.2d 543, 550 [122 P.2d 3].)

Respondent cites decisions (*A. Hamburger & Sons* v. *Kice,* 129 Cal.App. 68 [18 P.2d 115]; *Rapaport* v. *Forer,* 20 Cal. App.2d 271 [66 P.2d 1242]; *Simpson* v. *Security First National Bank,* 71 Cal.App.2d 154 [162 P.2d 494]) which hold that the superior court has discretionary authority to decline to entertain actions for declaratory relief. Such rulings were based upon the facts reported. They hold also that it is incumbent upon appellant to show affirmatively by the record that relief was improperly refused. This, the appellant has done. The contents of the complaint leave no doubt that a genuine controversy exists concerning the interpretation of a written contract covering important obligations and rights of the respective parties.

Judgment reversed with instructions to overrule the demurrer.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied August 2, 1950, and respondents' petition for a hearing by the Supreme Court was denied September 21, 1950. Schauer, J., voted for a hearing.