[Civ. No. 4600.   Fourth Dist.   Nov. 3, 1953.]

BERNE N. SCHWEIZER et al., Respondents, v. LOCAL JOINT EXECUTIVE BOARD OF SAN DIEGO, COMPRISING WAITERS AND BARTENDERS UNION, LOCAL NO. 500, et al., Appellants.

Todd & Todd, Vincent Whelan, Thomas Whelan and Walter Wencke, Stevenson & Richmond for Appellants.

Gray, Cary, Ames & Frye, James W. Archer and Ward W. Wardell, Jr., for Respondents.

BARNARD, P. J.—This is an action to restrain the defendants from interfering with plaintiffs' business by picketing, or by preventing the purchase and delivery of supplies, and for damages. The plaintiffs operated a cocktail lounge in San Diego. The defendants are certain unions herein referred to as "Joint Board," another union of drivers and ware-

housemen referred to as "Local No. 683," and two companies engaged in selling beer.

The plaintiffs had a contract with Joint Board covering the employment of union members between November 1, 1950, and November 1, 1951, with a provision that it should be renewed unless written notification was given by either party 30 days prior to its termination. On September 27, 1951, Joint Board gave the plaintiffs a notice which read: "This is to notify you as per Section 22, of the expiration of your present agreement. The (Joint Board) expect to negotiate a new contract with you by——.''

Joint Board offered a new contract containing a provision for payments into a health and welfare fund, which plaintiffs refused to sign. On March 14, 1952, a strike was called and plaintiffs' place of business was picketed. On March 27, 1952, the plaintiffs sought an injunction on the ground that the proposed contract was illegal in that it provided for payments into this benefit fund without prior approval by the federal Wage and Stabilization Board. A temporary restraining order was issued and on April 2, 1952, on stipulation of the parties, the restraining order was dismissed by an order reciting that it had been stipulated that the defendants would not picket for the failure to execute the contract forming the basis of the complaint; that a new contract without those objectionable features was being tendered; and that the controversy forming the basis of the complaint had become moot. Immediately thereafter, Joint Board tendered a new contract, limited to a period of 30 days, eliminating any payments into this fund, and also informed the plaintiffs that it expected to obtain the approval of the Wage Stabilization Board. The plaintiffs refused to sign this contract and picketing was resumed. After commencement of this second picketing, plaintiffs attempted to purchase beer from various wholesalers in San Diego but were unsuccessful because truck drivers and warehousemen employed by such wholesalers refused to handle beer for delivery to plaintiffs.

The present action was brought on April 14, 1952. The complaint alleged that there was no labor dispute; that Joint Board had demanded that plaintiffs sign a 30-day contract and agree to then sign another contract with terms unknown to plaintiffs; that this demand is unreasonable and the terms of the agreement offered are unlawful and contrary to public policy; that plaintiffs are willing to enter into a lawful agreement; that on April 7, 1952, the defendants entered into an illegal

and unlawful monopoly for the purpose of restricting trade and commerce, in violation of section 16720 of the Business and Professions Code (hereinafter called the Cartwright Act), whereby defendants agreed to sell merchandise only to those who are members of the monopoly and to prevent all others from purchasing merchandise for resale to the public; that pursuant to said unlawful trust agreement the defendant distributors refused to sell the plaintiffs any merchandise; and that the plaintiffs have been damaged in various amounts.

So far as material here, the court found that the notice served by Joint Board on September 27, 1951, indicated an intention to negotiate a new contract; that no such negotiations were had except as thereafter set forth; that the original contract of November 1, 1950, remained in full force; that in January, 1952, Joint Board entered into a contract with certain persons who were to act as trustees to hold a certain fund for the purpose of paying insurance benefits to employees of employers who might agree to pay 50 cents per day per employee into said fund; that prior to March 14, 1952, these trustees and Joint Board and certain employers filed a petition with the Wage Stabilization Board for approval of the benefits to be thus paid according to a plan submitted, but this plan was not approved until May 9, 1952; that the plaintiffs refused to sign a contract including a provision for the payment of 50 cents per day per employee into this fund; that this was followed by picketing and by a temporary restraining order, which order was dismissed on the representation that a contract was being presented which eliminated the provision for these payments; that such a contract was offered which was limited to a period of 30 days; that the plaintiffs refused to sign this limited contract and picketing was resumed; that Joint Board has not since offered any contract other than one substantially the same as that offered prior to March 27th, and which would require the plaintiffs to perform acts contrary to the rulings of the Wage Stabilization Board; that the purpose of the picketing was to induce plaintiffs to accept such a contract by cutting off their supplies, the picketing being during the daytime, but not at night or on Sundays or holidays when plaintiffs' business is the heaviest; that picketing was maintained as a part of the combination thereafter described and not for the purpose of informing the public of a labor dispute; that Local No. 683 and its members have for years been associated with Joint Board and its unions in a central labor council, with an understanding that the

members of Local No. 683 will refuse to deliver goods to a place of business being picketed by the other unions; that a violation of this understanding is punished by suspension, expulsion or fines; that Local No. 683 has contracts with the defendant distributors and other firms selling beer at wholesale; that this contract provides that its members shall not be discharged or discriminated against for refusing to pass a duly sanctioned picket line; that Local No. 683 informed all of its members that this picket line was recognized as a sanctioned picket line; that on or about April 7, 1952, the plaintiffs appeared at the place of business of defendant distributing companies and ordered beer offering to take delivery there; that the warehouse employees, whose duty it was to handle the beer, refused to fill said orders because of this picket line and in order to cooperate in preventing plaintiffs from obtaining supplies; that the defendant distributors made no effort to require their employees to deliver such beer, and thereby refused to sell beer to the plaintiffs; that this refusal to sell was the result of a tacit understanding that no beer would be sold to persons whose business was being picketed by picket lines recognized by Local No. 683, and the distributor defendants are a part of this combination to create and carry out restrictions in the sale of beer, and restrictions in trade and commerce; and that by reason of these acts the plaintiffs have suffered certain damage.

As conclusions of law, it was found that the contract demanded by Joint Board is illegal and in violation of the rules of the Wage Stabilization Board, and would require the plaintiffs to perform illegal acts; that the acts of the Joint Board and the coercive measures employed are an unlawful interference with plaintiffs' business and a violation of their property rights; that the conduct of the defendants constitutes a combination to create and carry out restrictions in trade and commerce, and constitutes a trust within the meaning of chapter 2, part 2, of division 7 of the Business and Professions Code; that the plaintiffs are entitled to certain named damages; and that the plaintiffs are entitled to a permanent injunction enjoining the defendants from such picketing, from refusing to sell or deliver beer to the plaintiffs, and from in any manner, directly or indirectly, preventing distributors from selling or delivering supplies to the plaintiffs. Judgment was entered accordingly, and the defendant labor unions have appealed.

The record and briefs are voluminous and many points are raised, including attacks on the jurisdiction of the state court; the sufficiency of the evidence to sustain the findings; the sufficiency of the findings to support the conclusions of law; the failure to find upon important issues; and the failure to admit certain evidence. The parties agree that picketing for an unlawful purpose is subject to injunctive relief. (*Park & Tilford Import. Corp.* v. *International Brotherhood of Teamsters*, 27 Cal.2d 599 [165 P.2d 891, 162 A.L.R. 1426]; *Seven Up Bottling Co.* v. *Grocery Drivers Union*, 40 Cal.2d 368 [254 P.2d 544].) The appellants contend that no unlawful purpose appears in connection with the picketing here in question; that no restraint of trade and no violation of the Cartwright Act appears; that they were guilty of no conspiracy, and the contract they sought to obtain through this picketing was not illegal; that the members of Local No. 683 have the right to refuse to deliver goods through a picket line or to work on goods destined for the respondents; and that there was no existing contract between the parties when the picketing commenced. The respondents contend that this picketing was for an illegal purpose because the 1950 contract was not terminated by proper notice and was still in force, because the purpose of the picketing was to secure an illegal contract, and because the acts of the appellants constituted a violation of the Cartwright Act.

The controlling questions raised relate to whether or not an unlawful purpose, or an unlawful combination in restraint of trade, here appears. ■ We are not impressed with the argument that the notice given was not sufficient to terminate the 1950 contract, and the court's finding that this contract was still in force is not supported by the evidence. The notice referred to the clause of the contract providing for the giving of a 30-day notice of termination, and gave notice in accordance with that clause of the expiration of the agreement. The sufficiency of the notice is not affected by the fact that it stated that it was expected to negotiate a new contract, and an attempt was made to that end.

■ It cannot be held that an illegal picketing appears because specific permission covering the proposed benefit plan had not been obtained from the Wage Stabilization Board at the time the picketing commenced, or that it appears that the purpose of the picketing was to secure an illegal contract calling for benefit payments from the employers without the approval of the Wage Stabilization Board. It is argued in this

connection that no such approval was obtained until May 9, 1952, and that when obtained this approval did not specifically cover the respondents. Evidence as to the terms of the approval given as of that date were not admitted in evidence and, although tendered at the oral argument and objected to, that evidence is not part of the record here. The contract actually tendered by the appellants, although a temporary one, eliminated all reference to these benefit payments and the evidence clearly indicates that there was no intention to demand a contract including that element until such time as proper approval was obtained from the Wage Stabilization Board. There is no evidence that such approval could not have been obtained in due course, or that the offered contract would not have been extended until that was done. The evidence clearly indicates that the respondents refused to sign the offered contract not because of the lack of any proper approval but because they were unwilling to pay the benefit payments in question.

■ It has long been held in this state that after striking, employees may engage in a boycott, including the right to a concerted withdrawal of social and business intercourse with the employer and the right to induce others to withdraw their business patronage from the employer, and that such action is lawful if reasonably relevant to working conditions and the purposes of collective bargaining. (*J. F. Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581 [98 P. 1027, 16 Ann. Cas. 1165, 21 L.R.A.N.S. 550] ; *Lisse* v. *Local Union No. 31,* 2 Cal.2d 312 [41 P.2d 314] ; *McKay* v. *Retail Auto. S. L. Union No. 1067,* 16 Cal.2d 311 [106 P.2d 373] ; *Lund* v. *Auto Mechanics Union No. 1414,* 16 Cal.2d 374 [106 P.2d 408] ; *C. S. Smith Met. Market Co.* v. *Lyons,* 16 Cal.2d 389 [106 P.2d 414] ; *Fortenbury* v. *Superior Court,* 16 Cal.2d 405 [106 P.2d 411] ; *In re Lyons,* 27 Cal.App.2d 293 [81 P.2d 190] ; *In re Blaney,* 30 Cal.2d 643 [184 P.2d 892].) In the latter case, statutes declaring a secondary boycott to be unlawful, apparently adopted for the purpose of meeting conditions permitted under prior court decisions, was declared to be unconstitutional as being too broad in scope.

The respondents contend that the grounds for decision in the Blaney case leave little vitality in the supposed public policy indicated by the other cases above cited. They argue that the Cartwright Act makes the actions here in question unlawful in this state; that this act contains no express exception in favor of such union conduct as appears here; and that

no supposed public policy should be relied on to create such an exception. They rely mainly on *Giboney* v. *Empire Storage & Ice Co.,* 336 U.S. 490 [69 S.Ct. 684, 93 L.Ed. 834]. That case involved picketing in violation of the restraintive trade statute of the state of Missouri. The respondents contend that the Cartwright Act accomplishes the same purpose in this state, that the actions of the appellants constitute a combination in restraint of trade as defined in the Cartwright Act, and that these acts, being illegal, were properly restrained. It is argued that the understanding between the appellant unions and the notification given of the existence of this picket line constituted a combination and conspiracy which depended upon the cooperation of the warehousemen; that this comes within the terms of the Cartwright Act; that this is an attempt to restrain trade or commerce in a commodity; and that prior decisions in this state are not applicable because the evidence here shows an attempt to gain control over the supply of a product and to refuse to sell it to anyone who has displeased the unions.

The gist of the complaint in this action is that the defendants entered into a combination for the purpose of restricting trade or commerce, in violation of the Cartwright Act. The only agreement or combination thus referred to consisted in the understanding between the unions to the effect that their members would not cross each other's picket lines, and would not assist in the delivery of products to an employer whose place of business was subjected to a picket line recognized by another union, and the acquiescence of the distributors in this agreement. ▮ As long ago as the case of *J. F. Parkinson Co.* v. *Buildings Trades Council, supra,* it was pointed out that a combination for that purpose was not unlawful when its object was to further lawful purposes affecting labor conditions, such rules having been adopted long before any controversy arose and the action complained of being merely the putting into effect of those rules when the controversy arose and brought the employer within the general class necessarily affected by the enforcement of the rules.

The main question on this appeal is whether the actions of the defendants, resulting in the refusal to handle goods in connection with delivering them to the respondents, constitute a trust or combination for the purpose of creating or carrying out restrictions in trade or commerce, within the meaning of the Cartwright Act. ▮ It is true, as pointed out in *Kold Kist* v. *Amalgamated Meat Cutters,* 99 Cal.App.2d 191 [221

P.2d 724], that combinations for the purpose of controlling prices and creating a monopoly are not the only ones forbidden by the Cartwright Act since that act also forbids combinations for the purpose of carrying out restrictions in trade or commerce, limiting or reducing the production of any commodity or preventing competition in the sale or purchase of any commodity. It does not follow, however, that any agreement or combination which has the effect of interfering to some extent with the purchase or sale of merchandise, is covered by the act and unlawful by reason thereof. As we read that case, it supports the conclusion that the real test in a particular case is the primary purpose of the agreement or combination in question, and that if this primary purpose is to interfere with the trade in, and prevent the sale of, certain products the agreement or combination is unlawful. It seems well established, however, that if the primary purpose of the agreement or combination is to see that union members shall not be required to violate picket lines, where reasonably relevant to the purposes of collective bargaining, the agreement is not unlawful.

The Cartwright Act, as a whole, seems to have been designed to cover trusts or combinations in the ordinary sense, in order to prevent certain price fixing and other restrictions on trade in connection with the production and sale of commodities, and particularly as related to persons manufacturing or selling such goods. One section of the act, section 16703 of the Business and Professions Code, provides that labor is not a commodity within the meaning of the act. Reasonably interpreted, this must be held to have been intended to except from the operation of the act combination of laborers for the purposes of furthering their interests by collective bargaining, when not otherwise unlawful.

In *C. S. Smith Met. Market Co.* v. *Lyons,* 16 Cal.2d 389 [106 P.2d 414], where the picketing caused other firms and their employees to refrain from selling or delivering merchandise to the plaintiffs, the Cartwright Act was mentioned and it was pointed out that that act interfered to some extent with free competition in business; that interference with business through picketing is also sanctioned by law; and that the test to be applied in such a case is whether the workmen are demanding something which is reasonably related to employment and collective bargaining. In the Blaney case, where a statute expressly making secondary boycotts unlawful was involved, the court said: ''It is now settled law that workmen

may lawfully combine to exert various forms of economic pressure upon an employer, provided the object sought to be accomplished thereby has a reasonable relation to the betterment of labor conditions, and they act peaceably and honestly." In *Apex Hosiery Co.* v. *Leader*, 310 U.S. 469 [60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044], where a restraint of trade appeared, the court said: "But the Sherman Act admittedly does not condemn all combinations and conspiracies which interrupt interstate transportation." We think the same must be said of the Cartwright Act. This statute has been in force for many years and it may not be assumed that, had it not been overlooked, the many decisions in this state with respect to the lawfulness of such acts as here appear would have been to a contrary effect. We conclude that no violation of the Cartwright Act appears, and that the record does not support the trial court's conclusion that the acts of the defendants constituted a combination in restraint of trade within the meaning of that act.

Under what we regard as the controlling effect of the decisions of the Supreme Court above cited, and others, we think no unlawful activity appears which would justify or support the injunction here granted. Numerous other points raised need not be considered.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied December 2, 1953, and respondents' petition for a hearing by the Supreme Court was denied December 30, 1953. Edmonds, J., and Spence, J., were of the opinion that the petition should be granted.