**Les LYSTAD** and Stanley Lystad, doing business as Amerian Shuffleboard Sales Co., of Seattle, and Clyde DeGraw, doing business as Dekum Tavern, Plaintiffs,

**v.**

**LOCAL UNION NO. 223 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS,** Lloyd Hildreth, Frank Malloy, W. M. Goble, the Association of Coin Machine Men of Oregon, and Danny Matin, doing business as General Amusement Company, Defendants.

Civ. No. 8284.

United States District Court
D. Oregon.

Oct. 7, 1955.

Dean Ellis (of Ellis & Ellis), Portland, Or., for plaintiff.

Richard R. Carney (of Tanner & Carney), Portland, Or., for defendant, Local Union and its agents.

John F. Reynolds, Portland, Or., for defendants, Coin Machine Men and Danny Matin.

EAST, District Judge.

The plaintiffs above named, in their complaint for injunction, demand, inter alia:

(1) That a temporary restraining order and preliminary injunction issue out of this Court, restraining the defendants and each of them, and their servants, agents and employees from in any manner interfering with the respective business operations of the plaintiffs, and from picketing or threatening other retaliation against any person or business which enters into a contract to purchase shuffleboards and scoreboards from plaintiff, American Shuffleboard Sales Co., of Seattle, and that after a trial of this cause, such injunction be made permanent.

(2) For a decree of this Court that the existing contract between the Association of Coin Machine Men of Oregon and Local Union No. 223, tends to create a monopoly and restrain commerce between the several states and is for that reason a violation of the statutes of the United States and void.

The several defendants have filed motions to dismiss plaintiffs' complaint, the Court having ordered that the motions to dismiss should stand as making issue to plaintiffs' complaint.

A hearing was had upon these demands and the Court received the evidence offered by the parties, respectively.

Plaintiffs, Les Lystad and Stanley Lystad, constitute a co-partnership doing business under the name of American Shuffleboard Sales Co. of Seattle, Washington, and are the sellers of an amusement device generally known as a shuffleboard. The mode of utilizing this device is unimportant except that the players activate and become entitled to play the device by a coin receiving and operating device. A manually activated electrical device is used for keeping the player's score. The Lystads, in the ordinary course of their business, offer their product for sale to citizens of other states, including the State of Oregon. We will refer to these plaintiffs as Lystads.

The plaintiff, Clyde DeGraw, hereinafter referred to as DeGraw, is the owner and operator of a business in Portland, Oregon, known as "Dekum Tavern." The business of this plaintiff is that gen-

erally known as a beer tavern offering the usual well known commodities for sale to its patrons.

For some time prior to September 1, 1955, DeGraw maintained in his premises for the amusement of his patrons, a coin operated shuffleboard of the general description aforesaid. This board was owned by the defendant, W. M. Goble, a member of the hereinafter mentioned "Coin Machine Men of Oregon," an Oregon corporation, hereinafter referred to as Association, and used by DeGraw under a rental arrangement, the rental being computed on a fifty-fifty basis of the "take" of the device.

On or about August 26, 1955, DeGraw, through a traveling representative of Lystads, placed a "Purchase Order" for one of Lystads' shuffleboards at a purchase price and installation charge designated as follows:

"Complete        997–
Del & installation    30–
                    ————
              1027.00"

This written purchase order also bore upon its face the following stamped language:

"It is understood and agreed that this order does not constitute a sale and that the equipment above described is left with the proposed purchaser on trial only for a period of not longer than 60 days. Either the seller or proposed purchaser may request that the said equipment be returned to the seller at any time within the said 60-day period. in the event of sale the terms of purchase shall be agreed upon by the parties, otherwise equipment shall be returned to the seller."

Pursuant to this purchase order Lystads shipped from Seattle, Washington, to DeGraw at Portland, Oregon, the shuffleboard. On September 1, 1955, an employee of Lystads commenced the installation of the shuffleboard in DeGraw's premises. This employee was a member in good standing of the Local Union of International Teamsters, etc., in Seattle, but not a member of the defendant, Local.

The defendant, Local Union No. 223, of the International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers, hereinafter referred to as Local, is an unincorporated association of individuals commonly known as a labor union made up of grocery, meat, motorized and miscellaneous drivers employed in Portland, Oregon, and particularly engaged in the delivery and servicing of coin operated amusement devices.

The defendant, Lloyd Hildreth, is the secretary of Local, and the defendant, Frank Malloy, is an agent of Local.

The defendant, Association of Coin Machine Men of Oregon, is an erroneous designation of the aforesaid Coin Machine Men of Oregon, an Oregon corporation, hereinafter referred to as Association, with its principal office located at 1003 S. W. Front Avenue, Portland, Oregon, and the defendant, Danny Matin, is an individual doing business under the assumed name and style of General Amusement Company in Portland, Oregon.

For some time prior to all of the definite dates herein mentioned, the members of Association were "composed of individuals, partnerships, co-partnerships or corporations engaged in the owning and operating and distributing of amusement devices in the City of Portland, commonly known as Pinball or Marble Machines, Cranes and Diggers, and Automatic Phonographs and Amusement Arcades which are duly licensed by said City," and had recognized Local as the sole collective bargaining agent for their respective employees under a collective bargaining agreement in writing, effective January 1, 1955, and continuing until January 1, 1957.

This written agreement contained, among its provisions, the usual provisions for wages and hours and working conditions of the employees, union security, etc., and also the two following provisions of interest:

"9. Paragraph 3—

"Service to equipment on location shall be limited to installations of equipment owned by recognized Union operators under contract to Local No. 223 except where non-coin operated equipment is involved.

"15.—Employees shall service only equipment owned by their Employer and shall not service location owned equipment."

None of the plaintiffs are members of Association.

During the period between September 1st and 3rd, 1955, the defendants, Frank Malloy and Wm. M. Goble, in conversations with DeGraw and the employee of Lystads, advised them that Lystads' shuffleboard was "non-union" and that unless it was removed DeGraw's place of business would be picketed. The plaintiffs refused to remove the device and on or about September 1st, pickets sponsored by Local appeared carrying picket banners with the advice that DeGraw's premises maintained non-union installations. The picketing has been continuously maintained. No deliveries of beer have been made to DeGraw's premises since the establishment of the picket line. DeGraw's gross business during the week immediately preceding the picketing was between $90 and $100, with a net profit of approximately $30. That week's business was normal. DeGraw's business since the picketing has been reduced to a gross of $35 to $40 per week, with practically no profit.

Following the suggestion of the defendant, Goble, Lystads contacted the defendant, Lloyd Hildreth, as secretary of Local and were advised that Local desired Lystads to enter into a collective bargaining agreement with reference to their employee working in Portland, the terms being identical with the aforesaid contract with Association. Lystads offered to enter into the contract provided that Section 9, paragraph 3 and Section 15 each be deleted from the contract. Local, through its secretary, refused.

From the foregoing factual situation it is obvious that the placement of Lystads' shuffleboard in DeGraw's premises for trial purposes with the view of a future sale, was a legitimate course of business on the part of Lystads and the entire transaction with DeGraw was had in the flow and course of interstate commerce between the State of Washington and the State of Oregon.

▌ Likewise it is obvious that by reason of the negotiations between Lystads and the secretary of Local, that a labor dispute within the meaning of the Labor-Management Act has existed. If the labor dispute is bona fide and lawful the picketing of DeGraw's premises by reason of the Lystad equipment being located there is lawful. Sailors' Union of the Pacific (AFL) and Moore Dry Dock Co., 92 NLRB 547, 27 LRRM 1108 (1950).

▌ It goes without saying that if such labor dispute is bona fide and legal that this Court is without jurisdiction to issue any orders restraining the picketing by the very terms of the Labor-Management Act, 29 U.S.C.A. § 141 et seq. The plaintiffs contend that the acts and conduct of the defendants above outlined constitute an agreement and conspiracy among the several defendants against the plaintiffs and to deprive the plaintiffs of the law protecting trade and commerce against restraints and monopolies as provided for in Title 15 U.S.C.A. §§ 1, 15, 26.

Sec. 1, supra, provides:

"Every contract, combination in the form of trust or otherwise, * * * in restraint of trade or commerce among the several States, * * * is declared to be illegal: * * *."

Sec. 15, supra, provides:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy".

and Sec. 26, supra, provides:

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue".

■ The authorities are legion to the effect that a labor dispute between a union and an employer is not or ceases to be a bona fide lawful labor dispute when an unlawful demand on the part of a union is made upon an employer. Therefore, our query is narrowed to the question as to whether or not the demands of Local as set forth in Sections 9, paragraph 3, and 15, of the aforesaid collective bargaining contract are lawful in view of Sec. 1 of Title 15, aforesaid.

■ A reading of the provisions of said demands readily shows that the restraint against Association's employees' service to coin operated equipment owned by any person other than "recognized union operators under contract to" Local, arbitrarily discriminates against location owners, or, put another way, against ownership of a coin operated shuffleboard by a tavern owner. In other words, it is an arbitrary premise of unionizing or non-unionizing one class of business as against another class of business. This arbitrary classification necessarily forecloses any collective bargaining between an employer and the bargaining agent of an employee without reference to the respective labor demands of the employer or the bargaining agent. In plain language, these two paragraphs are a direct contractual covenant on the part of Local running in favor of Association not to permit its members to service coin operated equipment of the nature involved in this matter owned by any class of business other than the operator members of Association. The ultimate effect of which is simply to deprive DeGraw of his right to own and operate property in the course of his lawful and legitimate business, as a matter of arbitrary action and not on the basis of whether or not there is a lawful labor dispute between Local and the proposed seller of such goods, or himself.

Applying the effect of these two demands upon Lystads the ultimate conclusion is that there is no way that a sale of their shuffleboard to DeGraw through interstate commerce can be accomplished. If they agree to the demands and enter into the contract offered, Local would be obligated, under its contract with Association, to continue its refusal to permit its employee members to service the equipment owned by DeGraw.

■ It is true that plaintiffs' complaint alleges and all of the parties assumed that an actual contract of sale relationship existed between Lystads and DeGraw. The ultimate proof showed otherwise. Nevertheless, to interfere with extended good-will or offer of sale of a prospective seller (placement on trial) of goods through interstate commerce is the same as interfering with a then contractual relationship incurred through interstate commerce.

No realistic person will deny that the adverse economical effect upon DeGraw by the picketing will cause him to return the goods held on trial and defeat any hoped for sale by Lystads. As stated, these demands contained in Section 9, paragraph 3, and Section 15, aforesaid, arise and are maintained by reason of a written contract between the defendants, Local and Association, and their respective agents, the defendants, Lloyd Hildreth, Frank Malloy and W. M. Goble,

342

and in the opinion of this Court constitute a contract between them being in restraint of trade or commerce among the several states within the meaning of and in violation of title 15, Section 1, supra. See Allen Bradley Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, 325 U.S. 797, at page 809, 65 S.Ct. 1533, at page 1540, 89 L.Ed. 1939, wherein it is stated:

"But when the unions participated with a combination of business men who had complete power to eliminate all competition among themselves and to prevent all competition from others, a situation was created not included within the exemptions of the Clayton and Norris-LaGuardia Acts [15 U.S.C.A. § 12 et seq., 29 U.S.C.A. § 101 et seq.]"

and also:

"The primary objective of all the Anti-trust legislation has been to preserve business competition and to proscribe business monopoly."

The Court is further of the opinion that the effect of the picketing if continued constitutes irreparable injury to both the plaintiffs, Lystads and DeGraw.

The Court concludes that the plaintiffs are entitled to an order providing, pendente lite, or further order herein, that the defendant, Local, and the defendants, Lloyd Hildreth and Frank Malloy, as agents thereof, be temporarily restrained from in any manner maintaining the picketing of the plaintiff, DeGraw's premises aforesaid, or threatening other retaliation against any person or persons engaged in business with the plaintiff, DeGraw, by reason of any matters or things arising or growing out of its demands against Lystads or DeGraw on account of the prospective or actual purchase of the shuffleboard involved.

Plaintiffs may have said order upon giving of an approved bond against damage to the defendants for said injunctive relief if improvidently granted, in the amount of $1,000. It is so ordered.