[Civ. No. 22090.   Second Dist., Div. One.   Dec. 31, 1956.]

ALPHA BETA FOOD MARKETS, INC. (a Corporation) et al., Respondents, v. AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA (an Unincorporated Voluntary Association) et al., Appellants.

David Sokol for Appellants.

Musick, Peeler & Garrett, Harold F. Collins, McLaughlin & Casey and James A. McLaughlin for Respondents.

FOURT, J.—This is an appeal by the defendants from a judgment in a declaratory relief action wherein the court determined that certain controversial provisions of a collective bargaining agreement were void and invalid in that such provisions violated the laws of the United States and the laws of the State of California.

The facts are substantially as follows: The action was instituted by 12 retail market operators doing business in various localities in Southern California. The four appellant unions represent the employees who are employed in the various markets of the respondents. Each union represents certain employees in a distinct geographical area in which one or more of the respondents operate markets. Agreements were entered into between the respondents and appellants and in each instance the agreement contained substantially the following language: Self-Service Markets: All fresh meats, fresh poultry, fresh fish, fresh rabbits, shall be cut, prepared and packaged on the premises and dispensed by members of Meat Cutters Local.

The agreements with which we are concerned were negotiated during November and December of 1955, and were signed as of about December 10, 1955. The same, or substan-

tially the same language as above set forth was in earlier agreements between the parties hereto for several years immediately prior to December 10, 1955. During the immediate previous years the practice of freezing and packaging frozen meats, fish and poultry had become more widespread, whereas at the time the agreements were first entered into, there apparently was little if any prepackaged frozen meat available at retail markets. During the latter part of 1955, and the early part of 1956, large meat packers greatly expanded their business of precutting, prepackaging and freezing all of the usual types and cuts of meat. In this new procedure, there were utilized new types of wrapping materials which were more adaptable to the continued preservation of frozen foods whereby such products could be kept substantially fresh for indefinite periods of time in self-service freezers such as were used in the respondents' markets. The process used by the large meat packers was essentially an assembly-line system where the bones and fat were removed before the cuts were packaged and frozen. The products are quickly frozen to prevent destruction of the meats and to enable them to keep fresh for an extended period of time. They are machine wrapped and packaged with special materials which tend to keep out oxygen and moisture and thereby prevent deterioration.

About January 20, 1956, each of the appellant unions directed a notice to the respondents demanding that the sale of such prepackaged frozen meat products be discontinued until the disputed provisions of the collective bargaining agreements could be arbitrated. The respondents declined to arbitrate because they contended it was not subject to arbitration. The action here was in declaratory relief to have it determined whether the provisions of the agreement in question were illegal and void as constituting unlawful restraints of trade under both federal and state laws.

The respondents sought an injunction against the unions to restrain a threatened strike. However, the trial court denied any such injunction upon the ground, apparently, that the unions had not, in fact, called any strike.

The sole question involved here, therefore, is whether a union or a group of unions can combine or conspire with an employer or group of employers, by means of a collective bargaining agreement, to restrain and prevent the manufacture and sale of commodities, such as frozen meats, poultry and fish, even though the objective of the union or unions may be to monopolize the work on such meat products for their

own members to the exclusion of workmen employed in the plants of the processors or packers of such products, and regardless of whether such workmen are union members.

We are of the opinion that such provisions in such a contract are illegal and void as being in violation of the federal and state antitrust laws.

The frozen prepackaged products are competitive to fresh meat, fish and poultry, which are regularly cut and wrapped in retail stores, and to enforce the terms of the agreement in question would obviously result in prohibiting the handling and sale of the prepackaged frozen products in the retail markets. There are set forth in a footnote hereto the provisions of sections 16720 and 16722 of the Business and Professions Code.[1]

Section 16750 of the same code provides a remedy to a person injured as a result of any combination or conspiracy, and section 16755 provides for criminal penalties for participating in any such violation.

In the case of *Kold Kist, Inc.* v. *Amalgamated Meat Cutters*, 99 Cal.App.2d 191 [221 P.2d 724], the defendants caused a provision to be placed in a collective bargaining agreement

---

[1] "§ 16720. Trust defined: Purposes. A trust is a combination of capital, skill or acts by two or more persons for any of the following purposes:

"(a) To create or carry out restrictions in trade or commerce.

"(b) To limit or reduce the production, or increase the price of merchandise or of any commodity.

"(c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

"(d) To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this State.

"(e) To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they do all or any or any combination of any of the following:

"(1) Bind themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure, or fixed value.

"(2) Agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure.

"(3) Establish or settle the price of any article, commodity or transportation between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any such article or commodity.

"(4) Agree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected."

"§ 16722. Contracts void. Any contract or agreement in violation of this chapter is absolutely void and is not enforceable at law or in equity."

which prohibited the sale of frozen meat products after 6 o'clock p. m. from the refrigerated display cases in the retail markets. The court said, among other things, in deciding the case the following (at page 197) :

"While combined action which is in restraint of trade, as the term is commonly used, is illegal, regardless of the objective of the parties, it is also illegal if it is entered into for the purpose of restraining trade. Even though it appeared to be the purpose of the unions to improve the status of their members by limiting hours of work it was a proper inquiry whether it was intended to accomplish this purpose by placing restrictions upon the trade in plaintiffs' products through the prevention of the sale thereof except through union members."

Further, in answer to the contention of the appellants that as long as they are seeking only that to which organized labor is entitled, there can be no violation of the antitrust laws, the court in the Kold Kist case (*supra*), at pages 200-201 stated:

"As we have heretofore pointed out, defendants have not denied that detriment has resulted and will continue to result to plaintiffs' business in the manner and to the extent alleged in the complaint and supporting affidavit. Nevertheless they argue that even though there has been and will be restraint there is no remedy available to plaintiffs for the reason that they, the unions, are seeking only to obtain uniform working hours for all employees. They say that it must be demonstrated from the face of the contract or from the pleadings of plaintiffs that the purpose of the provisions of the contract is to 'directly, intentionally and specifically' unreasonably and illegally restrain trade in a way which is unconcerned with the accomplishment of a legitimate labor objective or the contract cannot be deemed an illegal restraint of trade. This is to claim, in effect, that whenever their efforts are calculated to advance the interests of their members the effect upon others is not to be considered. This contention has frequently been advanced and rejected. If we were to agree with it, the result would be that the assertion of any lawful labor objective, regardless of the means proposed for the accomplishment thereof, would preclude the courts from making inquiry to determine whether the objective was indeed lawful.

"In *Giboney* v. *Empire Storage & Ice Co.*, 336 U.S. 490 [69 S.Ct. 684, 93 L.Ed. 834], the union argued that the primary objective of their combination and picketing was to improve

wage and working conditions, admittedly a lawful purpose, and that 'their violation of the state anti-trade restraint laws must be dismissed as merely incidental to this lawful purpose.' The court said, quoting from *International Harvester Co.* v. *Missouri*, 234 U.S. 199, 209 [34 S.Ct. 859, 58 L.Ed. 1276], ' "It is too late in the day to assert against statutes which forbid combinations of competing companies that a particular combination was induced by good intentions. . . ." ' It was also said that 'To exalt all labor union conduct in restraint of trade above all state control would greatly reduce the traditional powers of states over their domestic economy and might conceivably make it impossible for them to enforce their anti-trade restraint laws.' The courts of this state have held that the letter and paramount object of the law (Cartwright Act) is satisfied if the tendency of the action or proposed action is to restrain trade. (Citing cases.)

"Defendants also argue that only those combinations are in unlawful restraint of trade which seek to control prices and create a monopoly. A complete answer to this contention is found in the statute itself. Under subdivisions (a), (b) and (c), of section 16720, Business and Professions Code, it is unlawful for two or more persons to combine to create or carry out restrictions in trade or commerce; to limit or reduce the production of any commodity; or to prevent competition in the sale or purchase of merchandise, produce or any commodity. These enactments are distinct from the remainder of the section which has to do with price fixing. Although price fixing and monopolistic practices tend to affect competition, production and restrictions in trade, the Legislature has not limited illegal combinations in restraint of trade to those which involve price fixing or monopoly. (*People* v. *Sacramento Butchers' Protective Assn.*, 12 Cal.App. 471 [107 P. 712]; *Overland Pub. Co.* v. *H. S. Crocker Co.*, 193 Cal. 109 [222 P. 812].)"

Similar statutes in other states have been similarly interpreted, as in *Austin* v. *Painters' Dist. Council No. 22*, 339 Mich. 462 [64 N.W.2d 550]; *Giboney* v. *Empire Storage & Ice Co.*, 336 U.S. 490 [69 S.Ct. 684, 93 L.Ed. 834]; *Foust* v. *Truck Drivers Union* (Ohio Court of Common Pleas, April 3, 1956), 38 L.R.R.M. 2645; *Commonwealth* v. *McHugh*, 326 Mass. 249 [93 N.E.2d 751].

Appellants have cited three California cases in an effort to support the last mentioned contention, namely, that the provisions of the agreements do not violate the state antitrust

laws. One is a superior court decision, namely *McDonnell* v. *Meat Drivers Local*, 29 L.R.R.M. 2176; and the other two are *Los Angeles Pie Bakers Assn.* v. *Bakery Drivers*, 122 Cal.App. 2d 237 [264 P.2d 615], and *Schweizer* v. *Local Joint Executive Board*, 121 Cal.App.2d 45 [262 P.2d 568]. None of the cases cited are, in our opinion, in point.

Coming now to the question whether the prohibitions in the agreement violated the federal antitrust laws: We are of the belief that such language does so violate the federal law. Section 1, title 15, U.S.C.A. specifies that contracts and combinations in restraint of trade are illegal. Section 2, title 15, U.S.C.A., specifies that every person who shall participate in such unlawful acts is guilty of a misdemeanor and subject to a fine or imprisonment or both.

In *Allen Bradley Co.* v. *Local Union No. 3*, 325 U.S. 797, 808-810 [65 S.Ct. 1533, 89 L.Ed. 1939], the unions and employers contracted to exclude electrical equipment from use unless purchased from local manufacturers, and in determining the case the court said: "We have been pointed to no language in any act of Congress or in its reports or debates, nor have we found any, which indicates that it was ever suggested, considered, or legislatively determined that labor unions should be granted an immunity such as is sought in the present case. . . . But when the unions participated with a combination of business men who had complete power to eliminate all competition among themselves and to prevent all competition from others, a situation was created not included within the exemptions of the Clayton and Norris-La Guardia Acts.

"It must be remembered that the exemptions granted the unions were special exceptions to a general legislative plan. The primary objective of all the anti-trust legislation has been to preserve business competition and to proscribe business monopoly. It would be a surprising thing if Congress, in order to prevent a misapplication of that legislation to labor unions, had bestowed upon such unions complete and unreviewable authority to aid business groups to frustrate its primary objective. For if business groups, by combining with labor unions, can fix prices and divide up markets, it was little more than a futile gesture for Congress to prohibit price fixing by business groups themselves. . . .

"Our holding means that the same labor union activities may or may not be in violation of the Sherman Act, dependent

upon whether the union acts alone or in combination with business groups.''

Also see *Anderson-Friberg, Inc.* v. *Justin R. Clary & Son, Inc.*, 98 F.Supp. 75; *Manaka* v. *Monterey Sardine Industries, Inc.*, 41 F.Supp. 531; *Gulf Coast Shrimpers & Oystermans Assn.* v. *United States*, 236 F.2d 658; *United States* v. *Employing Plasterers Assn.*, 347 U.S. 186 [74 S.Ct. 452, 455, 98 L.Ed. 618, 627]; *Lystad* v. *Local Union No. 223*, 135 F.Supp. 337.

In our opinion the terms of the agreement in the instant case evidence a conspiracy, combination and unlawful agreement. The effect of the agreement is to bar from the markets any such frozen, prepackaged products. To comply with the agreement would not only mean, among other things, that the sale of the products is restrained, but that the means for marketing such products are destroyed with the result that the sale and distribution of the products would be for all intents and purposes an impossibility in this area.

█ The appellants contend that the matter should have been submitted to arbitration, under the arbitration provisions of the agreement. In the first place, the arbitration provisions relate only to ''controversies involving the interpretation of any provisions of'' the agreement. The controversy here is as to the legality of the terms of the agreement. Questions of legality are not arbitrable by arbitrators.

In *Loving & Evans* v. *Blick*, 33 Cal.2d 603, 610-611 [204 P.2d 23], the court held that a claim arising out of an illegal provision in a contract was not subject to arbitration, saying, among other things: ''Section 1281 of the Code of Civil Procedure, providing for submission to arbitration of 'any controversy . . . which arises out of a contract,' does not contemplate that the parties may provide for the arbitration of controversies arising out of contracts which are expressly declared by law to be illegal and against the public policy of the state. So it is generally held that 'a claim arising out of an illegal transaction is not a proper subject matter for submission to arbitration, and that an award springing out of an illegal contract, which no court can enforce, cannot stand on any higher ground than the contract itself.' (6 C.J.S., § 12, p. 160.) Aptly illustrative of this well-settled principle is the fairly recent case of *Smith* v. *Gladney*, 128 Tex. 354 [98 S.W.2d 351], where a dispute arose between the parties as a result of trading in 'futures' upon the Chicago Board of Trade. The matter was submitted to arbitration. When suit was brought upon the award and it was affirmed 'on the

theory that [it] was final,' the appellate court, in reversing the judgment, said at pages 351-352 [98 S.W.2d] : 'It appears to be almost universally recognized that a claim arising out of an illegal transaction, such as a speculation in futures, is not a legitimate subject of arbitration, and an award based thereon is void and unenforceable in courts of the country. (Citing cases.)''

The appellants further contend that jurisdiction in this matter is either in the National Labor Relations Board because an unfair labor practice is involved, or in the federal courts because the enforcement of federal antitrust laws is involved and that therefore the state court has no jurisdiction. This is merely an action for declaratory relief to secure a ruling as to whether certain language evidences an unlawful conspiracy between employers and unions to restrict and prohibit the sale of certain commodities. The agreement was executed in California and is performable here. We believe the state court has jurisdiction to determine whether the agreement violates the law of this state as well as the federal law. (*Morey* v. *Paladini*, 187 Cal. 727, 736 [203 P. 760]; *Building Contractors* v. *Gugliemelli*, N.Y. Supreme Ct., 30 L.R.R.M. 2439; *Commonwealth* v. *McHugh*, 326 Mass. 249 [93 N.E.2d 751]; *Hunt* v. *Plavsa*, 103 Cal.App.2d 222 [229 P.2d 482]; Code Civ. Proc., § 1060; *Ralphs Grocery Co.* v. *Amalgamated Meat Cutters*, 98 Cal.App.2d 539 [220 P.2d 802]; *Harvey Machine Co., Inc.* v. *Western etc. Union*, 76 Cal.App.2d 421 [173 P.2d 330]; *Harvey Machine Co., Inc.* v. *Alvarez*, 76 Cal.App.2d 427 [173 P.2d 65].)

This is not an action to enforce compliance with any provisions of the Labor Management Relations Act. The pleadings do not show any unfair labor practices, as defined by that Act. There is no labor dispute with any employee who manufactures the products with which we are concerned. The laws which are violated relate to monopolies and restraints of trade and the National Labor Relations Board has no jurisdiction over such matters.

There was no allegation in the complaint in this instance to the effect that the Unions had used any coercion against any employees of the markets. In this case there is no question of any 'hot cargo,' or any secondary boycott. It was stated by counsel for respondent in the oral argument, and apparently concurred in by counsel for the appellants, that the products in question are processed and packaged by union labor in the first instance.

Subsequent to the filing of the briefs in this cause, the parties filed a stipulation in this court to the effect that a new collective bargaining agreement between the parties hereto, effective from November 5, 1956, to November 5, 1959, had been executed, which new agreement contains certain language in lieu of the disputed language in the contract now before us. The appellants state, "it would therefore appear that the entire matter is now moot." At the same time, appellants assert that they are confronted with the judgment of the trial court, and that they cannot dismiss the appeal, thus leaving as res judicata the judgment of the trial court.

As we view it, the matter of the new agreement is not before us for any determination, and it obviously was not before the trial court. Under the circumstances, the new agreement can have no bearing on the issue which is to be decided here. It might well be that the provisions of the new agreement are legal and proper, and at least counsel for each of the parties seemed to entertain the belief that such is the case. However, we are not called upon here to decide that question. It is also true that apparently the parties have reconciled their main differences, and there appears to be no controversy over the new agreement; nevertheless, as heretofore indicated, that can have no effect upon the questions submitted to this court.

For the reasons heretofore given, the judgment is affirmed.

White, P. J., and Doran, J., concurred.