474

Hyman Bernstein, Individually and as President of Bakery and Pastry Drivers Union, Local 802, American Federation of Labor, et al., Plaintiffs; v. Madison Baking Company, Inc., et al., Defendants.

Supreme Court, Special Term, New York County, November 23, 1942.

*Samuel J. Cohen* for plaintiffs.

*Gordon S. P. Kleeberg* for defendants.

MILLER, J. This is an action for specific performance of a collective bargaining agreement. The plaintiffs consist of Bakery & Pastry Drivers' Union, Local 802, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, and various jobbers or peddlers who are members of the said union and who are covered by the aforesaid agreement and entitled to the benefits thereof. The defendants are six employer corporations engaged in the bakery industry, each of which corporations entered into the labor agreement in question with the union on September 17, 1942. By this agreement the union undertook to improve the labor standards of certain of its members, known as jobbers or peddlers, who distribute the baking products of the defendant corporations in the manner known as peddling.

Originally, the union and its predecessor, Local 138, A. F. of L., included in its membership only those chauffeurs and helpers employed in the bakery industry who were the acknowledged employees of the manufacturers whose products they distributed. These employees were listed on the regular payrolls maintained by such employers, and were protected, as required by law, by workmen's compensation, social security

and unemployment insurance. After several years of effort on behalf of the employees the plaintiff union succeeded in consummating a considerable number of contracts with employers throughout the metropolitan area. Under these contracts labor conditions were standardized into a stable and uniform situation.

In the month of October, 1941, the union and the defendants entered into written agreements providing for the wages and working conditions of the members of the union employed by them. Although the aforesaid written agreements did not provide for the income or working conditions of the class of persons known as peddlers and jobbers, used or to be used by the said defendants in addition to or in lieu of their regular driver-employees for the distribution of their products, the said agreements did provide that all further questions with respect to said peddlers and jobbers and their compensation and working conditions should be discussed in the course of further negotiations. Thereafter on the 17th day of September, 1942, the union, having been designated as the lawful collective bargaining agent of the jobbers and peddlers, and the defendants entered into the aforesaid written agreement with respect to the compensation and working conditions of the said peddlers and jobbers.

The defendants contend that the plaintiff union is not justified in assuming jurisdiction over "jobbers" as they are not employees of the defendants but independent contractors, vendees and middlemen, and that in many instances they are corporations, partnerships and employers. They also contend that the agreement seeks to restrict trade, destroy competition and fix prices, and is therefore illegal.

The defendants are leading bakers of cakes and their brands have an established reputation. They sell their products to restaurants and storekeepers. Their products are sold through regularly employed drivers and salesmen, who drive the trucks of the defendants, and through jobbers or peddlers who personally make delivery in their own trucks, from the baker direct to the storekeeper. In the instances of sales through the jobbers or peddlers the latter are uniformly allowed a discount of 17% to 20% from the sale price. This discount is allowed principally because of the saving of the cost of the labor and the other expense incident to delivery to the storekeeper in defendants' trucks by their drivers and salesmen. The jobber is charged with the price of the product less the amount of the discount, the price however being the same as that which the defendant sells the product to the storekeeper through its

own drivers-salesmen. In some instances the name of a defendant is printed on the truck of the jobber.

The nature of the work performed by the jobber is substantially the same as that performed by the driver-salesman employed by the defendants. Unlike true jobbers they maintain no stock or office or place of business. In effect their function is primarily to deliver the cake from the baker or the exchange direct to the storekeeper, and as recompense for this labor they receive a compensation designated as a discount, which in reality is the equivalent of wages for services in delivering the product from the place of business of the defendants to their customer. As was said in *Lerner* v. *Laundry, etc., Union* (No. 60,595, C. C. H., 4 Labor Cases), by the Pennsylvania Court of Common Pleas: "It is true that they [the jobbers] assume the characteristics of an employer as distinguished from an employee. The legal capacity in which they perform their work is different. Their economic function, however, is primarily the same, for their work too consists chiefly in sales and distribution. They are therefore in direct competition with the driver salesman."

The mere fact that in some instances the jobber may be a corporation or a partnership does not prevent the individual performing the labor from joining the union and being bound by the collective bargaining agreement. Otherwise an employer would be permitted to evade collective bargaining agreements by dealing with partnerships or corporations.

The purpose of the plaintiff union, whether viewed with respect to jobbers and peddlers or with respect to drivers-salesmen, is a lawful labor objective, an activity having some reasonable connection with wages, hours, health, safety and the right of collective bargaining.

The agreement in question, which covers jobbers and distributors, was executed by the defendants after the United States Supreme Court had decided in March, 1942, that it was lawful and proper for the plaintiff union to picket their places of business (*Bakery Drivers Local* v. *Wohl*, 315 U. S. 769). Part of the consideration for the execution by the plaintiff union of the previous agreements executed in October, 1941, was the promise by the defendants contained therein to negotiate in good faith with reference to the terms of the agreement in question. Thus, by the execution of these agreements, the plaintiff union relinquished its right to picket the places of business of these defendants.

The agreement does not contravene section 340 of the General Business Law known as the Donnelly Act, as the plaintiff union is a bona fide labor union, and the objective here is a legitimate labor activity. Moreover, the agreement does not fix or regulate the price to be charged to the public for the defendants' products.

Defendants' contention that the agreement covering the jobbers constitutes a violation of the Presidential Executive Order forbidding " any increase in the wage rates prevailing on September 15, 1942 " is without merit. The Presidential Executive Order became effective in October, 1942, which was after the agreement was executed. (Executive Order No. 9250; Code of Fed. Reg., Cum. Supp., tit. 3, p. 1213.)

The agreement is valid and enforcible. Judgment is therefore directed for plaintiffs. The counterclaim is dismissed on the merits. Exception to defendants. Submit findings of fact and conclusions of law.