THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* MURRAY M. GASSMAN, MYER KAUFMAN, WILLIAM PUCCIARELLI, MAX ROSENTHAL, LARRY MENDELSOHN, MAX KLEITZEL, FRANK GOLD-BERG, JIMMY MESSINA, MIKE STERN, PHILIP MOSS, HERMAN RHEINGOLD, DAVID ELKIN, LOUIS GOLDBERG and SAMUEL HAKER, Respondents.

Reargued October 22, 1945; decided April 18, 1946.

*Nathaniel L. Goldstein, Attorney-General (William F. McNulty, Orrin G. Judd, John P. Powers, Vincent A. Marsicano*

and *Samuel A. Hirshowitz* of counsel), for appellant. I. The grand jury's conclusion that Local 324 " was not and is not a bona-fide labor union " was amply supported by the evidence and should not have been disturbed on a motion to dismiss the indictment on the minutes of the grand jury. (*People* v. *Glen*, 173 N. Y. 395; *People* v. *Sexton*, 187 N. Y. 495; *People* v. *Sweeney*, 213 N. Y. 37; *People* v. *Bob*, 233 App. Div. 94; *People* v. *Booth*, 52 Misc. 340; *People* v. *Steinhardt*, 47 Misc. 252; *People* v. *Melvin*, 2 Wheel. Cr. Cas. 262; *Columbia River Co.* v. *Hinton*, 315 U. S. 143; *People* v. *Distributors Div., Smoked Fish Workers Union*, 169 Misc. 255; *Matter of Wilson Sullivan Co., Inc.*, 289 N. Y. 110; *Matter of Electrolux Corporation*, 288 N. Y. 440; *Board* v. *Hearst Publications*, 322 U. S. 111; *People* v. *Masiello*, 177 Misc. 608.) II. In the absence of a showing that the findings contained in paragraph " 10 " of the indictment are unsupported by the evidence before the grand jury, it is immaterial that the independent laundrymen coerced into joining and remaining members of Local 324 are " workingmen " in the sense that they perform manual labor or that they may be performing the same economic function as employee drivers. With equal propriety, the argument thus advanced by the defendants could be applied to a host of other independent businessmen in numerous other trades and industries. (*Railway Mail Assn.* v. *Corsi*, 293 N. Y. 315.)

*Robert Szold, Irvine J. Shubert* and *Irving Michael Atkin* for respondents. I. Agent drivers are workingmen and may combine in labor unions. (*People* v. *Muller*, 286 N. Y. 281; *United States* v. *Hutcheson*, 312 U. S. 219; *Cafeteria Union* v. *Angelos*, 320 U. S. 293; *Met. Life Ins. Co.* v. *Labor Relations Board*, 280 N. Y. 194; *Goldstein* v. *State of New York*, 281 N. Y. 396; *Bernstein* v. *Madison Baking Co.*, 186 Misc. 474, 266 App. Div. 839, 291 N. Y. 827; *Bakery Drivers Local* v. *Wohl*, 315 U. S. 769; *Drivers' Union* v. *Lake Valley Co.*, 311 U. S. 91.) II. Agent drivers are realistically and legally workingmen at common law. (*Matter of Goodman* v. *Ralph*, 294 N. Y. 169; *Matter of Electrolux Corporation*, 288 N. Y. 440; *Matter of Morton*, 284 N. Y. 167; *Matter of Scatola*, 282 N. Y. 689; *Matter of Glielmi* v. *Netherland Dairy Co.*, 254 N. Y. 60; *Jones* v. *Goodson*, 121 F. 2d 176; *Gulf Refining Co.* v.

*Brown*, 93 F. 2d 870; *Matter of Wieder* [*Buffalo Evening News*], 292 N. Y. 609; *Bates Motor Transport Lines* v. *Mayer*, 213 Ind. 664; *Matter of Beach* v. *Velzy*, 238 N. Y. 100; *Texas Co.* v. *Zeigler*, 177 Va. 557.) III. Even if the driver agents are deemed to be independent contractors, the labor union provisions of the Donnelly Act (General Business Law, art. 22) apply because unionization of the agent drivers is part of the unionization of the workingmen in the industry. Inside laundry workers have a lawful interest in unionization of laundry drivers. (*Bossert* v. *Dhuy*, 221 N. Y. 342; *A. F. of L.* v. *Swing*, 312 U. S. 321; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260; *May's Furs & Ready-To-Wear, Inc.*, v. *Bauer*, 282 N. Y. 331.) IV. Unionized laundry workers have the right to unionize the agent drivers. (*Drivers Union* v. *Lake Valley Co.*, 311 U. S. 91; *Bakery Drivers Local* v. *Wohl*, 315 U. S. 769; *Angelos* v. *Mesevich*, 289 N. Y. 498; *Bernstein* v. *Madison Baking Co.*, 186 Misc. 474, 266 App. Div. 839, 291 N. Y. 827; *Schwartz* v. *Laundry & Linen Supply Drivers' Union, Local 187*, 339 Pa. 353.) V. When bona fide unions are interested in what is for them legitimate objectives, the entire situation is protected by the labor union exemption of the Donnelly Act. (*Bernstein* v. *Madison Baking Co.*, 186 Misc. 474, 266 App. Div. 839, 291 N. Y. 827; *American Fur Manufacturers Association, Inc.*, v. *Associated Fur Coat & Trimming Manufacturers, Inc.*, 161 Misc. 246, 251 App. Div. 708; *Weitzberg* v. *Dubinsky*, 173 Misc. 350, 259 App. Div. 1008; *Sainer* v. *Affiliated Dress Manufacturers, Inc.*, 168 Misc. 319.) VI. The Donnelly Act does not cover home laundry service. (*People* v. *Epstean*, 102 Misc. 476; *Finnegan* v. *Butler*, 112 Misc. 280; *Standard Engraving Co.* v. *Volz*, 200 App. Div. 758; *N. Y. Clothing Mfrs'. Ex., Inc.*, v. *Textile Fins. Assn., Inc.*, 238 App. Div. 444; *People* v. *Shakun*, 251 N. Y. 107; *People* v. *Horvatt*, 237 App. Div. 289; *People* v. *Mangan*, 262 N. Y. 508.) VII. That some driver agents have combined in corporations or partnerships, and that others use stores is of no significance. (*Boro Park Market* v. *Heller*, 280 N. Y. 481; *Cafeteria Union* v. *Angelos*, 320 U. S. 293.)

DESMOND, J. An indictment against these defendants has been dismissed on the Grand Jury minutes, and the People appeal. The indictment is a long one but we do not have to

work our way through its seventy-three counts. The parties agree that the whole indictment must fall unless there was evidence before the Grand Jury to support this allegation contained in one of the counts: "That the members of said alleged union are persons independently engaged in the business on their own account, duly licensed as such by the City of New York, having no employers, soliciting their own customers and independently engaging in the business of soliciting laundry trade for profit, and that none of the so-called laundry agents who became and are members of said alleged union are employees or have employers, but are engaged in business for themselves and that the said alleged union was not and is not a bona-fide labor union."

The reference is to section 340 of the General Business Law. Section 340 is part of the Donnelly Act, now article 22 of the General Business Law. Passed originally in 1899 (ch. 690), the act declared illegal and penalized every contract or combination whereby a monopoly in this State of any commodity in common use is or may be created or maintained or whereby competition in the supply or price of such commodity may be restrained or whereby, in order to create or maintain such a monopoly, the free pursuit of any business, trade or occupation is or may be restricted or prevented. The Donnelly Act is " little more than a codification of the common law upon the subject " (*Matter of Davies*, 168 N. Y. 89, 101). Under the common law it had been held that a combination of workingmen to obtain increased compensation for themselves was a criminal conspiracy " injurious to trade or commerce " (*People* v. *Fisher*, 14 Wend. 9, 15). In 1933, the Legislature added the word " service " to the first paragraph of section 340, apparently because of court decisions that the act prior to that amendment had no application to price fixing on " services ". In the same year there was put into the act a statement that it should not apply to certain co-operative associations " nor to bona fide labor unions ". Still later, in 1935, there was added, as subdivision 3 of section 340, these significant words, taken from the Federal Clayton Act (U. S. Code, tit. 15, § 17): " the labor of human beings shall not be deemed or held to be a commodity or article of commerce as such terms are used in this section " and the further pronouncement that " nothing herein contained shall be

deemed to prohibit or restrict the right of workingmen to combine in unions, organizations and associations, not organized for the purpose of profit." And not only the Legislature but the People of this State have declared in unmistakable terms that our antimonopoly laws are not to be used against workers seeking to better their lot. Article I, section 17, of the Constitution, adopted by popular vote in 1938, declares: "Labor of human beings is not a commodity nor an article of commerce and shall never be so considered or construed." One would look far for a flatter statement than that.

Our question is thus a simple one. If defendants did no more than organize and operate a " bona fide labor union " or an " association " of " workingmen ", and through it further the aims lawful for such a union or association, then the Donnelly Act, by precise exclusion, has nothing at all to do with their acts (see discussion of the Clayton Act in *Allen Bradley Co.* v. *Union,* 325 U. S. 797). If that be the situation in this case, defendants could not validly be indicted for a violation of the act and this indictment had to be dismissed (*People* v. *Glen,* 173 N. Y. 395; Code Crim. Pro., § 258).

Although some fifty witnesses, including most of the defendants, testified before the Grand Jury, the basic facts are few and undisputed. Until about twenty years ago the laundry companies in New York City had their bundles picked up from, and delivered back to, their customers by drivers employed by the companies. Then some of the laundry companies conceived the idea of changing the status of these drivers so as to avoid the payment of certain insurance premiums and other charges. Under the new plan the driver had to own his own truck and ceased to be an employee. These men, now called " agents ", became in time more and more independent and began to shop around among the various laundry companies for the best terms. Some of them combined together to operate their own laundries. Others, singly or in groups, conducted stores where customers brought laundry and called for it when finished. Some of these storekeepers carried the bundles to and from the laundries; in other cases the laundry company picked up the bundles at the store. A thousand or more of these drivers, agents and storekeepers were organized by defendants into Local 324 of the Amalgamated Clothing Workers of America. The so-called

" inside workers " in the laundries — that is, the employees who do the actual laundry work — are members of other locals of the parent union, so that practically all the domestic laundry workers in New York City are organized under the Amalgamated Clothing Workers of America. There are closed shop agreements between the laundry companies and the various locals, by the terms of which the laundry companies are forbidden to do business with drivers, agents or storekeepers who are not union members. Driver-agents and storekeeper-agents are not permitted to shift from one laundry to another except upon consents, procured from committees set up under the closed shop agreements. All but three of the defendants are officers of Local 324 — the other three are connected with the parent organization, the Amalgamated Clothing Workers of America. All, except the three last mentioned are, or have been, laundry truck or wagon drivers.

The members of Local 324, though no longer employees, still drive the vehicles, pick up and mark the bundles, carry them between customers and laundry companies, collect the charges and account to the companies for those collections, receiving as their compensation the difference between the amounts charged by the laundry and the amounts paid by the householders. Their physical activities and their economic function are the same as before. True, they have some of the marks or qualities of independent contractors, such as a measure of independence and some small investment of capital. But in common speech and common sense, they are still " working-men " just as are window cleaners or furnacemen who go from house to house and are not employees of anyone. We find no controlling definitions of " labor union " or " workingmen " but we are here dealing not with niceties of language but with a broad policy, strongly expressed, of exempting workers from the antimonopoly statutes. The policy of protecting and encouraging the right of workers to organize and bargain is as well settled in this State as any policy could be. It finds further expression in the anti-injunction statute (Civ. Prac. Act, § 876-a) passed in 1935, and in our State Labor Relations Act (Labor Law, art. 20), which was enacted in 1937. For sufficient reasons the Legislature limited the coverage of those two statutes to " employees ". The 1935 amendment of subdivision

3 of section 340 of the General Business Law, however, used the broader word " workingmen " and that amendment, as well as the 1939 addition to the Constitution, refers to " labor of human beings ". The word " worker " has a wider range than the word " employee ", and " worker " is the genus of which " employee " is a species (Restatement of Torts, Vol. 4, par. 776). " Workingmen " means people who perform certain tasks, rather than people in certain contractual relationships. The members of this local union are workingmen who do part of the job of washing household linens. As such, their organized activities for self-betterment are specifically exempted from the Donnelly Act, and no grand jury had any right to indict them for violating that act.

We find no controlling court decisions strictly in point except *Bernstein* v. *Madison Baking Co.* (266 App. Div. 839, leave to appeal denied, 291 N. Y. 827), which in essentials cannot be distinguished from this case. That was an injunction case but it would be strange if the courts should find criminal liability for acts not constituting a civil wrong. The conclusion here reached is consistent, also, with cases extending other labor laws to independent " non-employee " workers (see *Drivers' Union* v. *Lake Valley Co.*, 311 U. S. 91; *Board* v. *Hearst Publications*, 322 U. S. 111; *Bakery Drivers Local* v. *Wohl*, 315 U. S. 769; see, also, *Columbia River Co.* v. *Hinton*, 315 U. S. 143, 145, where an opposite result was reached because, as the court said in a note in the *Allen Bradley* case in 325 U. S. at page 807, the *Columbia Packers* case was " a dispute between groups of business men revolving solely around the price at which one group would sell commodities to another group ", and see the similar case of *People* v. *Distributors Div., Smoked Fish Workers Union*, 169 Misc. 255).

We are deciding this case only. We do not attempt to fix a point at which a person becomes so much an enterpriser that he can no longer enjoy the statutory privileges of a " workingman." " This is one of those classes of cases where it is safer to prick out the contour of the rule empirically, by successive instances, than to attempt definitive generalizations " (HAND, J., in *All Star Feature Corp.* case, 231 F. 251, 252, discussing the meaning of " workman " and " servant " in the Bankruptcy Act priority provisions).

Judge MEDALIE, before his death, voted for affirmance of the order here appealed from, and expressed views similar to those stated herein.

The order should be affirmed.

LEWIS, J. (dissenting). The public policy of this State as declared by the Legislature in section 340 of the General Business Law — commonly known as the Donnelly Act — pronounces as illegal all agreements for monopoly or in restraint of trade, except associations of designated types including "bona fide labor unions." In that connection subdivision 3 of that statute provides: "The labor of human beings shall not be deemed or held to be a commodity or article of commerce as such terms are used in this section and nothing herein contained shall be deemed to prohibit or restrict the right of *workingmen to* combine in unions, organizations and associations, not organized for the purpose of profit." (Emphasis supplied)

By the indictment, the dismissal of which is about to be affirmed, the Grand Jury of New York County has charged that, in violation of the provisions of the Donnelly Act, the defendants have associated themselves in an alleged labor union (hereinafter referred to as Local No. 324) for purposes of monopoly and in restraint of trade — not for the purposes of forming a bona fide union of workingmen — and have conspired to restrict competition in the supply of laundry service in New York County and elsewhere by preventing independent business people from having their laundry processed in laundries of their own selection. A majority of the court have concluded, as a matter of law, that the membership of Local No. 324 comprises workingmen and, accordingly, that the acts of the defendants were not in violation of the Donnelly Act.

We find it difficult to accept the majority view believing, as we do, that the record of evidence before the Grand Jury met the statutory test for the legal sufficiency of an indictment. That test is: "The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury." (Code Crim. Pro., § 258.)

It is our belief that — within the statutory requirements last quoted above — there was presented before the Grand Jury

evidence which " when  *  *  *  taken together  *  *  *  if unexplained or uncontradicted " was sufficient to " warrant a conviction by the trial jury " of the conspiracy charged. There was evidence that within the membership of Local No. 324 are those individuals who, with their own capital and their own equipment operated by their own employees, conduct laundry enterprises for their own account and are not subject to the control of the bulk laundries. That evidence presented a question of fact as to whether such members are workingmen, viz.., employees, or entrepreneurs — in this instance the conductors of business independent of the bulk laundries.

We do not conceive it to be a function of the court to determine whether the evidence before the Grand Jury establishes that the membership of Local No. 324 comprised workingmen rather than employers or entrepreneurs. Such action by the court usurps the .statutory function of the Grand Jury which body, as we have seen, is given power to indict in those circumstances where the evidence is such as " *in their judgment* ", if unexplained or uncontradicted, would warrant a conviction by a trial jury.

It is not for the court to exercise that judgment. In this instance the decisive inquiry by the Grand Jury was whether the defendants had formed a bona fide union of *workingmen* within the terms of the Donnelly Act, or, in violation thereof, had formed a combination in restraint of trade. In pursuing that inquiry the Grand Jury had the right to review both the facts before them and the law applicable thereto as means by which to formulate " *their* judgment " as to whether such evidence would warrant a conviction by a trial jury. As to the functions thus exercised this court has had occasion to say: " The grand jury is an institution that we inherited with the common law. It is for many legal purposes rather difficult of classification. It is neither a regularly organized tribunal, nor yet an entirely informal body. While in a certain sense a part of the court in connection with which it conducts its deliberations, it is, for many purposes, free from any restraint by that court. *A grand jury is clothed with power to determine both the facts and the law, and its methods of procedure, so far as they are not discretionary, are fixed by statute and not by rules of courts.*" (Emphasis supplied.) (*People* v. *Glen,* 173 N. Y. 395, 400–401.)

Upon the record before us we believe it is error to rule *as a matter of law* that the acts of the defendants proven before the Grand Jury were in furtherance of a legitimate union purpose within the exclusory provision of section 340, subdivision 2, of the General Business Law. Accordingly, we dissent and vote to reverse the orders of the Appellate Division and the Court of General Sessions and to reinstate the indictment.

LOUGHRAN, Ch. J., DYE and MEDALIE, JJ., concur with DESMOND, J.; LEWIS, J., dissents in opinion in which CONWAY and THACHER, JJ., concur.

Order affirmed, etc.