[Civ. No. 19745. Second Dist., Div. Two. Dec. 22, 1953.]

LOS ANGELES PIE BAKERS ASSOCIATION et al., Appellants, v. BAKERY DRIVERS LOCAL NO. 276 (a Voluntary Unincorporated Association) et al., Respondents.

Severance & Rice and Gordon B. Severance for Appellants.

Stevenson & Richman for Respondents.

FOX, J.—A demurrer to the complaint was sustained without leave to amend. Plaintiffs appeal from the ensuing judgment.

The plaintiffs are a voluntary, unincorporated employers' association, and certain of its members, who are engaged in the production, sale and distribution of pies (and other bakery products) in Los Angeles and vicinity. They employ drivers who use company equipment to distribute their products. They also use the services of independent drivers who have their own equipment. These owner-drivers buy pies at wholesale from plaintiffs, take title to the same, and resell them to restaurants, hotels and other establishments. They are not required to sell at any fixed or established price. They retain the difference between the purchase and resale prices. These owner-drivers serve trade routes which belong to them and which they have the right to sell. The manufacturers exercise no direction or control over the means by which the pies are delivered, looking merely, as plaintiffs assert, "to the end result—efficient distribution of pies to the restaurant and hotel trade."

Both groups of drivers belong to defendant union, the owner-driver group apparently having joined in 1952. The union has been the collective bargaining agent for the employee-drivers for a number of years and has entered into collective bargaining agreements on their behalf with most of the plaintiff bakeries. The union also sought to negotiate a contract on behalf of the owner-drivers by which the remuneration for their services would be based on a designated percentage discount from the retail sales prices which the respective companies established for their products. Upon the refusal of the bakeries to enter into such an agreement the union threatened to apply economic pressure.

Plaintiffs base their complaint for damages and injunctive relief on Business and Professions Code, section 16720, generally referred to as the Cartwright Act. They insist that the proposed contract in behalf of the owner-drivers is a price fixing agreement which constitutes an unlawful restraint of trade. The defendant, on the other hand, contends that the proposed agreement does not violate the Cartwright Act since it relates essentially to the compensation to be paid the owner-drivers for their services in distributing plaintiffs' products and is therefore not within the purview of the act. The position of the defendant is well founded, consequently the judgment must be affirmed.

A union may take into membership "businessmen-workers" who operate in an industry, field or trade in competition with organized workmen. (*Bautista* v. *Jones*, 25 Cal.2d

746, 749 [155 P.2d 343] ; *Cafeteria Emp. Union* v. *Angelos,* 320 U.S. 293 [64 S.Ct. 126, 88 L.Ed. 58] ; *Riviello* v. *Journeymen Barbers etc. Union,* 88 Cal.App.2d 499, 504-506 [199 P.2d 400].) From these cases it is clear that the conventional employer-employee relationship need not exist in order that the worker have union membership and representation.

The nature of the work performed by the owner-drivers is substantially the same as that done by the employee-drivers. Neither maintains any stock, office or place of business. In effect, the job of each group is primarily to deliver pies from the bakeries to the hotels, restaurants and other customers. The driver-employee is paid a wage which is fixed in the collective bargaining agreement for the personal services which he renders. In making a like delivery, the owner-driver not only furnishes his personal services but also his delivery truck. For his services and that of his equipment it is proposed by the union that he receive compensation based on a designated discount from the producers' suggested retail sales price. This, in essence, is the equivalent of wages for overall services in delivering the pies from plaintiffs' plants to the customers. It is true that the owner-driver possess many of the characteristics of an independent contractor as distinguished from an employee. The legal capacity in which they perform their work is admittedly different from that of the company-employed drivers. Their economic function, however, is fundamentally the same, for their work too consists chiefly in sales and distribution. They are working in the same field in which the driver-employees work. There can be no doubt that they are in competition with the driver-employees. The ill effects of such competition is described by Mr. Justice Jackson in *Bakery & Pastry Drivers etc. I. B. T.* v. *Wohl,* 315 U.S. 769 [62 S.Ct. 816, 86 L.Ed. 1178]. The competition here between the owner-drivers and the employee-drivers is as clear and direct as it was in the Bautista case between the milk peddlers and the employee milk deliverymen, or as it was in the Riviello case between the working barbershop proprietor and the employee barbers, or as it was in the Angelos case between the working cafeteria owners and the members of the culinary workers' union.

Substantially this identical situation arose in a New York case. There, also, the right of the union to represent the bakery owner-drivers in a collective bargaining agreement was challenged. There, as here, the compensation of those drivers was determined by a percentage discount from the sales price.

It was held that the union could properly represent the owner-drivers and that the contract was valid since it was a lawful labor objective having some reasonable connection with wages, working conditions and the right of collective bargaining. Also, it was there held that the contract was not invalid as being in restraint of trade since the plaintiff was a bona fide labor organization and negotiating such an agreement was a legitimate labor activity which was exempt from the New York antitrust statute just as such agreements are excluded from the provisions of the Cartwright Act in this state by the Business and Professions Code, section 1703. (*Bernstein* v. *Madison Baking Co.*, 38 N.Y.S.2d 811, aff. in 266 App.Div. 839 [43 N.Y.S. 517].) The same principles were adhered to in *Reiner* v. *Sullivan*, 33 N.Y.S.2d 77, in a dispute between a union and bakery owners respecting the distribution of their products through "itinerant jobbers." Incidentally, in the Bernstein case the court points out that the agreement did not fix the prices at which pies would be sold. The same is true in the instant matter. The proposed agreement does, however, contain a formula by which to calculate the compensation of the owner-drivers for their services.

Substantially the same problem also arose in New York in a criminal proceeding with respect to the laundry business. Formerly the laundry companies had their bundles picked up from, and delivered back to, their customers by employee-drivers. Later some of the companies changed the status of these drivers. Under the new plan the drivers owned their laundry trucks, thereby ceasing to be employees. As owner-drivers these laundrymen picked up and marked the bundles, transported them between the customers and the laundries and collected the charges. The laundrymen received as their compensation the difference between the amount charged by the laundry and the amount paid by the customer. These owner-drivers were organized into a union. An indictment was returned on the theory that the organization was a combination in violation of the antitrust law since the members were independently engaged in business on their own account, and not as employees. In affirming an order dismissing the indictment the court held that these laundrymen, although not employees, were nevertheless "workingmen" and their organization was excluded from the operation of the antitrust law. (*People* v. *Gassman*, 295 N.Y. 254 [66 N.E. 705, 166 A.L.R. 154].) The court pointed out that the physical activities and economic function of these owner-drivers was the

same as when they were employee-drivers. "True," said the court, "they have some of the marks or qualities of independent contractors, such as a measure of independence and some small investment of capital. But in common speech and common sense, they are still 'workingmen' just as are window cleaners or furnacemen who go from house to house and are not employees of any one." In the instant matter the physical activity and economic function of the owner-drivers is essentially the same as that of the employee-drivers.

In this connection it should be pointed out that just as "workingmen" are permitted to organize in New York without infringing the antitrust laws of that state, it is the legislatively declared public policy of this state that the individual "workman" shall have full freedom of organization for purposes of collective bargaining (Lab. Code, § 923), and that such organization does not violate the Cartwright Act. (Bus. & Prof. Code, § 16703.) The owner-drivers for the bakeries are just as truly workmen as were the owner-drivers for the laundries in the Gassman case, despite the fact that in a technical sense they may be styled independent contractors.

That such independent nonemployee workers are entitled to the benefits and protection of labor laws under appropriate circumstances is reflected in such cases as *Milk Wagon Drivers' Union* v. *Lake Valley Farm Products, Inc.*, 311 U.S. 91 [61 S.Ct. 122, 85 L.Ed. 63], *National Labor Relations Board* v. *Hearst Publications*, 322 U.S. 111 [64 S.Ct. 851, 88 L.Ed. 1170], *Bakery & Pastry Drivers etc. I. B. T.* v. *Wohl*, 315 U.S. 769 [62 S.Ct. 816, 86 L.Ed. 1178].

Plaintiffs rely principally on *Kold Kist* v. *Amalgamated Meat Cutters*, 99 Cal.App.2d 191 [221 P.2d 724], *Columbia River Packers Ass'n.* v. *Hinton*, 315 U.S. 143 [62 S.Ct. 520, 86 L.Ed. 750], *Hawaiian Tuna Packers* v. *International L. & W. Union*, 72 F.Supp. 562, *Allen Bradley Co.* v. *Local Union No. 3*, 325 U.S. 797 [65 S.Ct. 1533, 89 L.Ed. 1939], *Cleaners, Dyers etc. Union* v. *G. H. W. Cleaners & Dyers*, 200 La. 83 [7 So.2d 623], and *Truck Drivers' Local No. 421* v. *United States*, 128 F.2d 227. None of these cases are here applicable. In the Kold Kist case the primary purpose of the agreement was to interfere with the trade in, and to prevent the sale of, frozen meats and it had that direct effect. Consequently the agreement was in violation of the Cartwright Act. The inapplicability of the Columbia River Packers case is demonstrated by its characterization in a footnote in the Allen Bradley case as a "dispute between groups of businessmen

revolving solely around the price at which one group would sell commodities to another group." The Hawaiian Tuna Packers case was also simply a dispute about the price of a commodity, viz., fish, and not terms or conditions of employment. The court pointed out that "the facts do not reveal that the crewman are negotiating the subject of wages or percentage shares of the proceeds with the boatowners . . ." Incidentally, the reference to "percentage shares of the proceeds" as a means of compensating the crewmen is significant, since the owner-drivers in the instant matter are to be compensated on a percentage basis.

The Allen Bradley case presents no analogy on its facts to the instant situation. In that case the defendant union embarked on a campaign to secure a closed shop in New York City. To further this objective, they leagued themselves in a tripartite agreeement with manufacturers of electrical equipment and contractors installing such equipment. Under this agreement, the manufacturers established a closed shop and agreed to restrict their sales of electrical equipment solely to contractors who also had a closed shop agreement with defendant union. The contractors, in turn, committed themselves to purchase electrical equipment only from those manufacturers who had signed up with the union. The union promised not to allow its members to work for manufacturers of electrical equipment destined for sale in New York to a contractor not covered by its closed shop contract nor would its members install such equipment unless it had been produced by a manufacturer whose employees were organized by defendant union. Competition was effectively curtailed, and the agreements were enlarged to include price and market controls. So successful was this combination that manufacturers in the New York area were selling their equipment for a higher price locally than for identical equipment sold outside the city. The court held that by its concerted activity in combination with nonlabor groups, the union had become involved in a conspiracy to restrain trade in interstate commerce, thus losing its immunity under the Clayton and Norris-LaGuardia Acts. In the instant case, the union is acting only with others similarly situated to achieve legitimate and recognized labor objectives relative to working conditions and wages. (See *Hunt* v. *Crumboch*, 325 U.S. 821 [65 S.Ct. 1545, 89 L.Ed. 1954].)

The Louisiana Cleaners, Dyers & Pressers case is inapplicable here because the agreement there contained a covenant

fixing the retail prices to be charged by the members of the association for cleaning and pressing services. Here there is no attempt to prescribe, designate or maintain the price at which the bakeries or the owner-drivers will sell the pies to their customers. The prices are free to rise or fall in response to the fluctuations of the market. The bakeries are free to sell at whatever price conditions seem to them to warrant. Only the percentage of discount from the price which the bakeries decide upon for their products is sought to be fixed as compensation to the owner-drivers for their services. The Truck Drivers' Local case involved a conspiracy wherein a union and an employers' association sought to maintain a preexisting, fixed price for milk sold in interstate commerce. The practical effect and principal purpose of the agreement was to prevent the sale of milk at a price lower than the then established rate. This, of course, was illegal under the Sherman Act. The instant situation, however, obviously does not present a comparable analogy.

 In view of the expressed legislative policy of the state and the decisions of both the state and United States Supreme Courts, we are impelled to hold that the proposed agreement in the instant case is within the area of a lawful labor objective since it has some reasonable relation to working conditions and the right and purposes of collective bargaining. It is therefore excluded from the purview of the Cartwright Act.

Plaintiffs also ask relief on the theory that defendant seeks to induce breach of existing contracts between certain of the plaintiffs and some of their owner-drivers. However, it is recognized that in a proper case, interference with the contractual right of others may be justified and therefore privileged. (*Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33, 35 [112 P.2d 631]; Rest. Torts, § 767.) Since plaintiffs' complaint discloses that the proposed agreement falls within the sphere of a legitimate labor objective, lawfully and peacefully pursued, their position cannot be sustained. Where the inducement to the breach of a contract is ancillary to the exercise of peaceful and otherwise lawful methods directed to the purpose of attaining a legitimate labor objective, such conduct is justified and no liability attaches as between the parties to the labor controversy. (*Imperial Ice Co.* v. *Rossier*, *supra*, and cases cited; *J. I. Case Co.* v. *National Labor Relations Board*, 321 U.S. 332 [64 S.Ct. 576, 88 L.Ed. 762]; *Metropolitan Life Ins. Co.* v. *Durkin*, 94 N.Y.S.2d 865, 870-

871; 30 Cal.L.Rev. 181, 185-188. See, also, *Emde* v. *San Joaquin County etc. Council,* 23 Cal.2d 146, 155 [143 P.2d 20, 150 A.L.R. 916].)

Plaintiffs have attempted to appeal from the order denying an injunction. That order was by minute entry prior to judgment. It is therefore not appealable. The right to such relief, however, is reviewable on the appeal from the judgment.

The purported appeal from the order is dismissed. The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.