[Civ. No. 5532.  Fourth Dist.  Nov. 4, 1957.]

BENJAMIN F. GUNTER, Appellant, v. HENRY COOPER et al., Defendants; DISTILLERY, RECTIFYING AND WINE WORKERS' INTERNATIONAL UNION OF AMERICA et al., Respondents.

John T. Tomlinson, Jr., for Appellant.

Bodle & Fogel, George E. Bodle and George M. Dell for Respondents.

GRIFFIN, J.—This is an action for damages for purported libel, slander, interference with contractual relations, and conspiracy. From October, 1945, to November, 1949, plaintiff and appellant was a night watchman for his employer, Fruit Industries, Ltd., in Guasti, California. He alleged a letter, dated November 25, 1949, signed by defendant Henry Cooper, who died shortly after the letter was written, was sent to a Mr. Biane, superintendent of Fruit Industries, Ltd., and resulted in his discharge. The letter read in part as follows:

"A situation detrimental to the welfare and reputation of your plant has been brought to my attention. After careful

investigation I find the fault lies with one of your watchmen, namely, Ben Gunter.

"Due to his character and reputation the women on the bottling line are nervous in his presence and feel they can not do their best work. To safeguard their jobs, their health and the reputation of your plant I recommend that you discharge Mr. Gunter at once.

"If this is not done immediately, for the welfare of the women, I will stop the operation of this bottling line at once."

The complaint alleges that these statements were false and untrue; and that he suffered personal embarrassment and loss of employment. He further alleged that this communication shows, by innuendo, that Cooper meant that plaintiff was of such a character and reputation that women were nervous in his presence, feared he was likely to harm them, that he had molested women, and those reading said letter understood said words to mean this. He further alleged that Cooper was the business representative and agent of defendant and respondent Distillery, Rectifying and Wine Workers' International Union of America, an association (hereinafter referred to as International), an agent of defendant and respondent Winery and Distillery Workers' Union Local 51, an association (hereinafter referred to as Local 51), and that he was acting within the scope of his employment. He then alleged that Local 51 was affiliated with International. These latter two defendants, by answer, denied generally these allegations and particularly denied that any agency relationship existed. They did allege, however, that defendant unions were the collective bargaining agents of the employees of said employer and that the facts set out in said alleged communication were true, directed to an interested party, and they were privileged.

A jury trial was had. At the close of plaintiff's case a nonsuit was granted as to the conspiracy count pertaining to defendant Worrell, who was plant security man for plaintiff's employer. It was denied as to Union defendants except on the conspiracy counts. At the close of the case a motion for a directed verdict as to defendant International on the grounds that no evidence was produced by plaintiff to show agency between Cooper and International or to show malice or breach of contract by it was granted. A similar motion by Local 51 was denied, resulting in a jury verdict against it for $20,000. The court granted its motion for a new trial on the ground of insufficiency of the evidence.

Plaintiff appeals (1) From the judgment in favor of defendant International; (2) From the order granting Local 51 a new trial, and setting aside the verdict of the jury; and (3) From the order denying plaintiff's motion for a new trial as to International.

The proof of malice on the part of International and that it was acting by and through its claimed business agent Cooper, or through Local 51, as its agent, is lacking in evidentiary support. The only evidence produced by plaintiff was the introduction of the constitution and by-laws of International. Its headquarters were in Washington, D.C. They show that International is affiliated with the American Federation of Labor; that its purpose is to encourage the formation of other unions; to grant charters to local unions; that any local union accepting a charter and becoming affiliated with it must accept its constitution and by-laws; that the government of all local unions and members shall be vested in the International as supreme head; that each local union shall have the right to adopt by-laws governing matters of local usage, subject to approval of International; that each local union shall have the authority to handle all grievances for and on behalf of the membership without specific authorization from any member and shall have the power to adjust and dispose of such grievances in accordance with the best interests of the local union and its membership, subject to the right of appeal to International; that the officers of each local union shall be elected by ballot; and it designates such officers.

The constitution and by-laws of Local Numbers 51 and 56 provide as their object to assist and protect members of the local unions against unjust demands and unjust conditions, and to settle differences which may arise. They also provide as a part of the duties of their members, to faithfully observe the terms of contracts between the unions and the employers, and they are authorized to employ a business representative of the local union and empowered to seek adjustment of all controversies between the union and the employers.

It therefore affirmatively appears that defendant Cooper was not himself an authorized agent or representative of International, duly authorized by it to send the communication in evidence, unless it could fairly be said from the evidence produced that the local union was International's agent and by virtue of Local 51's agency Cooper was authorized to write

the letter in its behalf. In support of this claim plaintiff cites *Le Baron* v. *Kern County Farm Labor Union*, 80 F. Supp. 151. There was some additional evidence offered to the effect that International maintained a desk in Cooper's office located at 815 South Hill Street, Los Angeles. Later the witness corrected her testimony indicating it was Local 51 that maintained its office desk there, and that International had its office in Fresno. The letter here involved was written on a letterhead containing the printed name of International and its printed seal. Thereunder is designated the writer's address, "611 Hillstreet Building, 815 So. Hill Street." Then follows further printing: "Local Union No. 51 City of Los Angeles State Calif." It is signed "Henry O. Cooper, Representative."

There was testimony that after Cooper's death one Ethridge, a paid representative of International stationed in Fresno, temporarily took over Cooper's duties with Local 51, due to lack of funds of that particular local. He testified, however, that the local unions are strictly autonomous; that they elect their own officers and appoint their own agents; and that the International does not interfere with their local business and does not pay any of the officers or agents of the local union; that Cooper had no authority to act for International; that plaintiff contacted him (Ethridge) after Cooper's death and asked him to intercede in his behalf in having him restored to his former position as watchman; that he told him since he was a night watchman and not eligible to be a member of this local union, as he had been before, he had no jurisdiction but he would ask his employer to reinstate him; that he did so and was unsuccessful; that for this purpose he investigated the charges contained in the letter and interviewed one of the women bottlers, a member of the local union, at the plant, and she told him plaintiff made her nervous because he "leered" at her. Mr. Biane testified that prior to the receipt of the letter he had reports come to his office about this watchman; that when the letter came he called Gunter to his office, showed him the letter in confidence, which he had taken from the safe, and that plaintiff was discharged; that the reason was this as well as a series of troubles the company had with him over a period of six months or a year and that this was the culmination of those troubles.

Defendant Worrell testified he was plant security man and not a member of Local 51; that he talked to Gunter on one

occasion when the teletype wires had been shot in two causing considerable damage in the plant and plaintiff admitted shooting a bird off the wire; that on another occasion he shot at a tree and the bullet went through the print shop; that he had complaints from certain specified women employees waiting in their cars; that when they would see plaintiff coming toward them they said they were nervous and would roll up the windows and lock the doors; that plaintiff wanted to date one of the married women and she told him she was going to knock him in the head with a bottle if plaintiff said anything more to her, and he told her there was nothing he could do about it.

Plaintiff testified that the day after Thanksgiving Biane showed him the letter, gave him his final check, and said since a girl was killed in Los Angeles lately, "molesting women is hot as a firecracker"; and that the letter would stay in his safe unless plaintiff made him pull it out. (Apparently plaintiff later appeared with his attorney and the letter was examined by them.) Plaintiff then said he was not on good terms with defendant Worrell because he was always "bawling him out about something"; that about three weeks before he was discharged he felt the company was going to fire him anyway so he saw defendant Cooper about getting back into the union so it could fight the company in his behalf if he was discharged. He claims Cooper told him the company was misusing federal stamps and asked plaintiff to "catch them at it" if he could; that he did not see Cooper after that and he did not believe Cooper had any ill will or malice toward him but that Worrell did because he, plaintiff, had reported him on one occasion for not making the rounds on one watch; that as far as the union was concerned, outside of the letter, he had nothing against it. He then denied all the accusations made in the letter and said he had been a nervous wreck for the past six years over the affair; and that his wife could not even talk to him about it. He related an occasion when he was wiping the dust off of one of the girls' desks at the plant at the request of Worrell, and one of the girls winked at him, nodded her head, and he then laid down his rag and left. He also admitted he had previously reported to the federal authorities that the company for which he was then working was using an unlawful bleach coloring in the wine and that Biane and others in the company decided he was a "trouble maker." Some verification of this attitude is contained in

subsequent letters and cards written by plaintiff to Biane. One of these cards read:

"Nov. 23

"2 years to Day you and your Bunch Framed me it was Henry O Coopers I'Dea to turn the use of Carmel Caloring in Wine and the un-lawful Bleache to Federal authortier. He allso said to catch you on misuse of Federal Stamps He helped Frame some of the lies thats Been told on me You Broke up my Home."

When plaintiff discovered the name of one of the women employed by the company who had reported the conduct of plaintiff, he wrote to her ex-husband and told him the company had framed him and had bribed her to try and make their charges (that he molested women) stand up. He told the ex-husband he wanted him to write to plaintiff and tell him "she can be bribed," and said that the winery had too many paid liars. In another letter he asked the addressee's help to induce Biane to be strapped in an electric chair and let plaintiff question him. He further accused his former attorney of being "bought off," as well as one of the superior court judges in another case, and concluded that there was no justice in this county or in the state either.

It appears that plaintiff applied for unemployment benefits, giving as his reason for discontinuance of his services as "Falsely accused and fired." In reply the company wrote that the reason given by plaintiff was "violation of company rules." The company rules, received in evidence, provided that "Employees shall at all times so conduct themselves toward their fellow-workmen as to make for peaceful and hearty cooperation which will aid in building up general efficiency of every department in the plant."

Plaintiff, in his testimony, admitted the woman bottler, referred to in his letter to her ex-husband, did state in the club room before the other employees that plaintiff "should be single and you can go and come as you damned please." When questioned about the letter in evidence set forth in the amended complaint, plaintiff testified there was nothing in that letter that would cause him to be nervous or upset, and he wanted to apologize to the court for signing the amended complaint which would so indicate, but it was his memory that it said something about molesting women.

On rebuttal a steward for the women employees of the winery, designated by Local 51, testified plaintiff never

bothered her in any way, that his conduct toward the women was that of a gentleman, and no complaints were ever made to her about him. Several other women employees so testified. One, however, said she was seated in her car one night and defendant came up to her; that she closed and locked the doors and windows because she was nervous and did not know who he was. A Mrs. Seely, about whom plaintiff wrote to her husband, testified plaintiff never molested her but it made her nervous after plaintiff found out her name and told her who she was and she told Cooper about the incident but did not remember saying plaintiff "leered" at her, but she could have said it, she "just didn't recall."

The claim that defendant Cooper was directly and duly authorized to act for and on behalf of International as its agent, in sending the letter involved, is lacking in evidentiary support. Cooper was business representative of Local 51 only. The only paid representative of International in California was Ethridge. International paid no officers of the local union. It elected and paid its own representatives. Cooper had no authority to sign a contract for International nor to act for it as its agent. The only evidence is the possible assumed authority of Cooper to so act in using International's letterhead in directing the letter to plaintiff's employer. The constitution and by-laws of International gave no direct authority to Cooper to act for it in this regard. The only possible claim would be that Local 51 was an agent of International and as such agent International would be liable as principal for acts of the agent of the local.

The amended complaint, to attach liability to International, merely alleges that Cooper was the agent of International, and as such was acting within the scope of his employment. To attach liability to Local 51 it alleges he was agent of Local 51 and as such was acting within the scope of his employment. It does not allege that Local 51 was the agent of International and acting within the scope of its authority. It appears to us that the pleadings and proof are not sufficient to attach liability on International by reason of any claimed delegated agency to Local 51. This holding is supported by *Di Giorgio Fruit Corp.* v. *National Labor Relations Board* (App. Div. D. C. 1951), 191 F.2d 642, Cert. denied (1951) 342 U.S. 869 [72 S.Ct. 110, 96 L.Ed. 653]. It was there held that as a matter of law the local union was not acting as agent for its parent organization and said, after

setting forth similar provisions of the Constitution of the National union, at page 648:

> "All those provisions spell out a basic responsibility on the part of the local rather than a subordinate position of agency delegated by National. The presence of the two National representatives assisting the local Farm Union in the course of the strike was not sufficient to constitute the local an agent of the National. If, on the evidence here presented, it were to be held that this local was the agent of the National, it would be difficult to imagine a local member of the National which would not be such an agent."

See also *Keller* v. *Markley*, 50 Cal.App.2d 155, 156 [122 P.2d 614]. The order denying plaintiff a new trial as to this defendant was authorized.

The next question is whether the trial court was, under the evidence, permitted to grant a new trial as to defendant Local 51. Defendant Local 51 makes several claims why the court's decision in this respect can be supported. (1) That plaintiff did not sufficiently establish a cause of action for libel. (2) That the trial court had the right to believe that the claimed letter written by Cooper, which plaintiff said he saw, contained language to the effect that he "molested women" was not sufficiently established. There appears to be no justification to believe that any letter, other than the one produced, was written. Its language is rather definite as to its meaning. Cooper was not alive so could not inform the court as to the factual basis for writing the letter. There is some testimony that complaint was made about plaintiff which may well have induced Cooper to write the letter. Even assuming that the charges there made were shown to be untrue, as the testimony of the several witnesses might indicate, the plaintiff's testimony clearly shows he did not believe Cooper or the Unions entertained any malice toward this plaintiff when the letter was sent by Cooper. The record is also clear that the only persons against whom plaintiff made the charge of malice were Worrell and Biane. ■ Apparently the court believed it was a priviliged communication under section 47 of the Civil Code. Under subdivision 3 of that section malice is not inferred from the communication. The trial court was justified in this belief. (See also *Emde* v. *San Joaquin County etc. Council*, 23 Cal.2d 146, 154 [143 P.2d 20]; *Freeman* v. *Mills*, 97 Cal.App.2d 161, 166 [217 P.2d 687];

*Smith* v. *Los Angeles Bookbinders Union,* 133 Cal.App.2d 486 [284 P.2d 194].)

Although there may have been a conflict in the evidence on this question, the trial court, in the exercise of its discretion, was authorized to grant a new trial. ■ It is well settled that a motion for new trial is, to a large extent, addressed to the sound legal discretion of the court to which the application is made, and that its action in granting a new trial is conclusive and will not be disturbed, especially where the ground of the motion is insufficiency of the evidence to justify the verdict or decision and there is a substantial conflict in the evidence, in the absence of a clear and affirmative showing of manifest abuse of discretion (20 Cal.Jur. p. 27, § 13, and cases cited.)

■ The other claim is that the letter constituted an interference with the contractual relations between plaintiff and his employer. The evidence on this question is in conflict and the same rule here applies in reference to granting motions for new trial. There is testimony that plaintiff was a ''trouble maker,'' that he had reported his employer to the government authorities, and a six-weeks investigation followed without proof of any violation; that plaintiff reported his superior watchman to the insurance company for failure to make a nightly inspection of the plant, without results; that he shot at birds on the electric wires while on duty causing plant difficulties, etc.; that he felt he was going to be discharged before this letter was received; and the letter culminated in that discharge. There was also some evidence, though conflicting, that there was justification for writing the letter to plaintiff's employer in the interest of the health, safety, good morals, and well-being of women workers there employed, who belonged to the local union. Under certain circumstances, reporting such conditions has been considered as justified and privileged. (*Los Angeles Pie Bakers Assn.* v. *Bakery Drivers,* 122 Cal.App.2d 237, 243 [264 P.2d 615]; *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 [112 P.2d 631].) The trial court was justified in believing that plaintiff had not sustained the burden resting upon him in respect to this claim.

Judgment on directed verdict and order granting a new trial affirmed. Attempted appeal from order denying new trial dismissed.

Barnard, P. J., concurred.